**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0471n.06**
**Filed: July 6, 2006**

**Nos. 04-5811, 04-5812**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| v. | ) | EASTERN DISTRICT OF KENTUCKY |
| | ) | |
| Robert A. Dellheim, | ) | |
| Brianna Dellheim | ) | |
| | ) | |
| Defendants-Appellants. | | |

Before: SILER and ROGERS, Circuit Judges; and JORDAN, District Judge.[*]

ROGERS, Circuit Judge. This is an appeal from a sentence imposed pursuant to the Dellheims' plea to a large drug conspiracy. Both Robert and Brianna Dellheim agreed to plea bargains with appeal waivers. With respect to Robert's claim, the first issue is whether an appeal waiver that waives the right to appeal any "lawful sentence" prohibits the court from considering the merits of an appeal. It does not, and we consider the merits of the appeal to determine that Robert's sentence was lawful. We also consider the merits of Brianna's appeal because all parties agreed during the plea colloquy that Brianna had the right to appeal an unlawful sentence. On the merits, we affirm the district court because substantial evidence supports the enhancement for use of a weapon.

---

[*]The Honorable R. Leon Jordan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

## I. BACKGROUND

Robert and Brianna Dellheim pled guilty to a conspiracy to distribute about 6000 pounds of marijuana. They each pled guilty in plea agreements signed in September 2004. In his plea agreement, Robert waived the "right to appeal and the right to attack collaterally . . . any lawful sentence." JA 56. Brianna Dellheim waived the "right to appeal and the right to attack collaterally the . . . sentence." JA 62. During the plea colloquy, the United States Attorney explicity agreed that Brianna could appeal an "unlawful" sentence. JA 71.

Robert and Brianna admitted to a conspiracy to distribute 6000 pounds of marijuana between 1995 and April 2, 2003. After the arrest and cooperation of a drug courier associated with Robert, the DEA obtained an arrest warrant for Robert. On September 9, 2003, agents entered the Dellheim's home to arrest him. Robert was not home, but his wife Brianna was home. Brianna did not consent to a search, but the officers observed what they believed to be marijuana seeds and a note from a suspected co-conspirator on the refrigerator. The plain view observations formed the basis for a search warrant.

When the agents returned with a search warrant, the suspected marijuana seeds were missing. Brianna admitted to flushing them down the toilet. The officers searched Brianna's purse and discovered four bank checks made out to Brianna Dellheim, dated September 9, 2003. Those checks totaled over one million dollars. The agents also searched the house and discovered guns.

Agents testified that they discovered about 45 firearms on the Dellheims' property. On September 11, 2003, the agents returned to open a safe located in the barn. The safe contained weapons. According to the agents, in addition to containing weapons, the barn was also the area where Robert distributed marijuana. A co-conspirator, Mr. Lopez, testified that he delivered marijuana to the barn in 1999 and 2000. Among other guns, the officers found a loaded .44 or .45 caliber revolver, a shotgun, a shotgun with a pistol grip, an "SKS" military-type rifle used by "Communist block nations," a rifle of unknown type, a Ruger mini 14, and an AR-15 "military-type" rifle. Additionally, the officers found a "drawer full" of hunting and survival-type knives in a spare bedroom.

The DEA did not look up the serial numbers on the guns to determine when they were purchased. The DEA only determined that the guns were not stolen. The DEA agent also admitted that no guns were found in the particular part of the barn where the marijuana was allegedly processed. Lastly, the DEA agent admitted that he did not know that the guns were in the house or barn when marijuana was processed at the Dellheims' property.

One of the co-conspirators, Mr. Lopez, testified that he saw "four or five boxes of long bullets" that were a "gold color" when delivering marijuana to the barn between 1999 and 2000.

The district court made the "logical" finding that the Dellheims did not go out and collect all the weapons between April (the last date of the charged conspiracy) and September (when the guns were found). JA 140-41. Additionally, the district court relied on circumstantial evidence

when finding that guns were present on the Dellheims' property during the conspiracy. The district court enhanced both Robert and Brianna's offense level under U.S.S.G. § 2D1.1(b)(1) (2003) for possession of a dangerous weapon. Robert was sentenced to 135 months (lowest under the guideline range). Brianna was sentenced to 60 months.

The Dellheims filed timely notices of appeal. The only issue argued on appeal concerns the enhancement for possession of a firearm.

## II. Appeal Waiver

The Sixth Circuit reviews de novo the question of whether a defendant waived his right to appeal his sentence. *United States v. Murdock*, 398 F.3d 491, 496 (6th Cir. 2005). Waiver is "the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993). The threshold dispute is whether the language in the plea agreement is an effective "intentional relinquishment" of the right to appeal. If the appeal waivers contained in the Dellheims' plea agreements prevent them from challenging how their sentencing was conducted, then we may not address the appeal. *United States v. McGilvery*, 403 F.3d 361, 363 (6th Cir.2005). Because the appeal waivers do not actually function to bar an appeal, we reach the merits.

## *A. Robert Dellheim's waiver*

Robert waived the "right to appeal and the right to attack collaterally . . . any lawful sentence." The material difference between Brianna and Robert's waiver is the adjective "lawful."

Because Robert's waiver is effectively nugatory, we consider the merits of Robert's appeal to determine if his sentence was "lawful." *See United States v. Johnson*, 979 F.2d 396, 399 (6th Cir.1992) (stating that "ambiguity [in a plea agreement] must be construed against the government"). We interpret the word "lawful" to mean that Robert can challenge the calculation of his sentence.

The term "lawful sentence" describes a sentence that conforms with statute and accurately reflects how a judge would adjudicate it. That is, the waiver of a right to appeal any "lawful sentence" requires this court to determine if the sentence complies with law and, therefore, does not really function as an appeal waiver.

The government argues that we should apply *United States v. Rice*, 145 Fed. App. 155, 157-58 (6th Cir. Aug. 27, 2005), and hold that a waiver of the right to appeal any "lawful sentence" is the same as a waiver of the right to appeal "any sentence." *Rice* is not applicable to the instant situation because Rice conceded that he waived the right to appeal. *Id.* at 157 (stating that, "Defendant argues that 'although [his] plea agreement contained a waiver of his right to appeal, that waiver is not enforceable'"). Robert does not argue that the plea agreement is unenforceable. Unlike Rice, Robert does not concede that a waiver of the right to appeal any "lawful sentence" actually functions as an appeal waiver. Robert argues, instead, that the terms of the appeal waiver do not function as a waiver of the right to appeal. Thus, *Rice* does not apply to Robert's case.

We recognize that the Tenth Circuit, in an unpublished decision, has defined waiver of "the right to appeal any legal sentence imposed by the Court," in a way that is consistent with the

government's view in this case. *United States v. Antillon-Gutierrez*, 77 F. App'x 480, 481 (10th Cir.

Oct. 9, 2003). *Antillon* noted:

> It is well settled that a defendant's knowing and voluntary waiver of his statutory right to appeal a legal sentence will generally be enforced. *United States v. Black*, 201 F.3d 1296, 1300 (10th Cir. 2000). . . . *see also United States v. Neary*, 183 F.3d 1196, 1198 (10th Cir.1999) (defining facially illegal sentences as those sentences based on race, gender, or other considerations contravening clearly established public policy). We have further defined an "illegal sentence" as one which is "'ambiguous with respect to the time and manner in which it is to be served, is internally contradictory, omits a term required to be imposed by statute, is uncertain as to the substance of the sentence, or is a sentence which the judgment of conviction did not authorize.'" *United States v. Dougherty*, 106 F.3d 1514, 1515 (10th Cir. 1997) (quoting *United States v. Wainwright*, 938 F.2d 1096, 1098 (10th Cir. 1991)).

*Antillon-Gutierrez*, 77 F. App'x at 482. The Tenth Circuit, therefore, narrowly construed the term

"legal sentence." Instead of interpreting "legal sentence" according to its commonly understood

meaning, *Antillion* defined "illegal sentence" as a term of art. *Antillon*'s formulation is

unconvincing because by the plain language of the waiver in this case "lawful" was not defined

narrowly to mean "facially unlawful."

The government also argues that interpreting "lawful sentence" to mean a sentence that was

adjudicated in accordance with the law effectively renders the appeal waiver nugatory. While this

is true, the mere fact that poor drafting on the part of the United States Attorney rendered the appeal

waiver meaningless does not compel a reading that the words do not bear.

Therefore, we consider Robert's arguments on the merits.

*B. Brianna Dellheim's waiver*

Brianna Dellheim waived the "right to appeal and the right to attack collaterally the . . . sentence." But during the plea colloquy the district court and the United States Attorney explicitly told Brianna that she could appeal an unlawful sentence. On its face, the waiver in this case is similar to other waivers that have been upheld. *See, e.g.*, *United States v. Bradley*, 400 F.3d 459, 461 (6th Cir. 2005); *see also United States v. Yoon*, 398 F.3d 802, 808 (6th Cir. 2005) (right to appeal any sentence within the maximum provided in the offense level). The key distinction is that both the district court and the United States Attorney interpreted the appeal waiver to apply only to "lawful" sentences. It cannot be said that Brianna knowingly waived the right to appeal her sentence.

Brianna argues that the district court essentially rewrote her plea agreement to state that Brianna also has the right to appeal any "unlawful" sentence. During the plea colloquy, the district court said to both Brianna and Robert:

> Now, there's waiver language contained in the plea agreements, and I want to make sure you understand it. In some circumstances—in most circumstances, actually—the parties have a right to appeal to the United States Court of Appeals, but in your case, in each of your cases, you have got some waiver language.
>
> And it is not unusual to have waiver language in a plea agreement. It's similar for each of you, in that you waive the right to appeal, the right to collaterally attack the guilty pleas, the conviction, and any lawful sentence, including an order of restitution. Do each of you understand that?

Brianna answered, "Yes, your Honor." The district court further commented on Brianna's waiver

by stating:

> I believe the language is a little bit different in Mrs. Dellheim's plea agreement. I
> think the reference to "lawful sentence" was excluded, just reading "the right to
> appeal any sentence." But of course it's implied that it would be a lawful sentence;
> if it was an unlawful sentence, then of course there would be a right to appeal.

The district court asked the United States Attorney, Mr. Smith, if he agreed with the district court's

characterization. Mr. Smith said, "Yes, your honor." Thus, the district court and the drafting party,

the United States Attorney, interpreted the language in Brianna's plea agreement to permit the right

to appeal "unlawful" sentences.

The instant case is distinguishable from *United States v. Fleming*, 239 F.3d 761, 764-76 (6th

Cir. 2001). Fleming explicitly agreed to waive his right to "appeal any sentence within the

maximum provided in the statutes of conviction." *Id.* at 762. At *sentencing*, after the plea was

accepted, the judge did not remind the defendant of the waiver component of his plea agreement.

Instead, the district judge recited the boilerplate notice regarding a defendant's right to appeal as

required by Federal Rule of Criminal Procedure 32(c)(5) stating:

> Mr. Fleming, you do have the right to appeal this matter to the United States Court
> of Appeals for the 6th Circuit. If you wish, that Court will determine if there's been
> any error made in this matter.

*Id.* at 763. The *Fleming* court upheld Mr. Fleming's waiver. *Id.* at 765. The judge's statement in

*Fleming* is distinguishable from district court's statements in the instant case. In this case, the

characterization of the plea agreement occurred during the plea colloquy. The district court and the United States Attorney interpreted the appeal waiver as permitting an appeal of an unlawful sentence. Thus, applying the analysis above relating to Robert's waiver of the right to appeal any "lawful" sentence, we determine that the sentence is appealable and reach the merits of Brianna's appeal.

**III. The merits of the Dellheims' appeal**

The district court's factual findings that the Dellheims possessed a firearm during the drug crime are upheld unless clearly erroneous. *United States v. Solorio*, 337 F.3d 580, 599 (6th Cir. 2003). Because there is sufficient evidence to support the district court's factual conclusion that the Dellheims possessed a gun during the conspiracy at issue, we affirm.

Many guns were found in the Dellheims' home and barn at the time of the arrest in September, 2003, and the record supports a finding that those guns were also present during the conspiracy. The enhancement for possession of a dangerous weapon under U.S.S.G. § 2D1.1(b)(1) states "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels." Sufficient evidence supports the conclusion that the guns were present during the conspiracy.

Circumstantial evidence supports the district court's conclusion that the Dellheims possessed weapons during the conspiracy that ended in April 2003. The district court noted that there is no direct evidence that the guns were present during the time of the conspiracy charged. The district court then made the "logical" finding that the Dellheims did not collect all the weapons between

April and September. Additionally, the district court relied on circumstantial evidence that guns were present on the Dellheims' property during the conspiracy. For example, Mr. Lopez testified that he saw "four or five boxes of long bullets" that were a "gold color" when delivering marijuana to the barn during the course of the conspiracy. Additionally, the district court considered the type of guns and concluded that the guns possessed (loaded large caliber handguns, military-type assault rifles, and short barrel shotguns) were consistent with use in the drug trade. The district court concluded that the Dellheims possessed firearms during the drug conspiracy charged.[1] Because the evidence supports that conclusion, the district court was not clearly erroneous.

Lastly, the Dellheims do not show that it was "clearly improbable" that the weapons possessed during the course of the conspiracy were used in connection with the offense. *See Solorio*, 337 F.3d at 599. Thus, the Dellheims's offense level enhancement for gun possession is lawful and properly calculated under the sentencing guidelines.

AFFIRMED

---

[1]The government argues that we do not need to limit our consideration of the time period to the dates of the charged conspiracy. Instead, the government argues that acts "committed, counseled, commanded or caused" by Robert occurred on or after September 9, 2003. *See* U.S.S.G. § 1B1.3(a). Without discounting the force of the government's argument, even limiting our consideration to the time period of the charged conspiracy we find that the enhancement was proper.

**SILER**, Circuit Judge, concurring. I concur with the result in this case, that is, that the district court did not commit error in the sentencing of both defendants. However, I respectfully disagree with the majority opinion on the effect of the alleged waivers in the plea agreements.

In the plea agreement by Brianna Dellheim, she waived any rights she had to the appeal and the right to collaterally attack the sentence. We have previously upheld a waiver of the right to appeal in *United States v. McGilvery*, 403 F.3d 361, 363 (6th Cir. 2005), so it is not legally impossible. Nevertheless, based on the colloquy among the court, Brianna, and counsel for both sides, as related in the majority opinion, it appears that the plea agreement was orally modified, so Brianna could appeal an "unlawful sentence." Therefore, I believe that Brianna had the same rights to appeal as did Robert Dellheim under his plea agreement where he gave up the right to appeal and to collaterally attack "any lawful sentence."

It is at this point where I depart from the majority opinion, for I believe that this language means that Robert and Brianna gave up most of their rights to appeal. The waiver to appeal or collaterally attack a "lawful sentence" means that if the court sentenced the defendant within the parameters of the statutory penalty, the appeal is waived. Thus, if the court were to sentence either defendant for a term of more years than is allowed under the penalty provisions for the offense charged, that defendant could appeal. Neither of the defendants in this case claims that the sentence rendered was greater than the statutory penalty provided in Count 1 (10 years to life), Count 2 (5-40 years), or Count 3 (up to 10 years). I would follow the general guidance from *United States v. Antillon-Gutierrez*, 77 F. App'x 480, 481 (10th Cir. 2003)(unpublished), although I do not think it

is necessary for this court to analyze all of the limits under the definition of "illegal sentence" or

"unlawful sentence." It is sufficient if we find that an unlawful sentence does not include an

enhancement for possession of a dangerous weapon under the Sentencing Guidelines, where the

final sentence did not exceed the statutory limit.

Therefore, I would dismiss the appeals of both defendants under the decision in *McGilvery*.