NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0450n.06
Filed: June 26, 2007

Case No. 06-3697

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| LOUIS A. ROBBINS, | ) | DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |

BEFORE: MARTIN, BATCHELDER, and CLAY, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** Louis A. Robbins ("Robbins") appeals his conviction and sentence on three counts of drug trafficking and firearms offenses, assigning as error the district court's denial of his motion to suppress and the court's imposition of a sentence of 181 months' imprisonment. Robbins argues that his motion to suppress should have been granted because the affidavit accompanying the request for a search warrant was insufficient to establish probable cause and that the executing officers, in conducting the search, exceeded the strict bounds of the warrant. In contesting his sentence, Robbins contends that the district court acted unreasonably by failing to impose the sentence recommended in his plea agreement. Finding no merit in these arguments, we **AFFIRM** the judgment of the district court.

**I.**

In early 2005, officers of the Toledo Police Metro Drug Task Force learned that Louis

Robbins was selling drugs out of his home. Detective Michael J. Awls asked a state court judge to issue a warrant authorizing a search of Robbins's residence. Detective Awls submitted an affidavit with his warrant request, which stated that he and other members of the task force had been investigating Robbins's drug trafficking operation, had learned that Robbins was a member of a large-scale trafficking organization, and had reason to believe Robbins was storing cocaine in his home. The affidavit contained numerous hearsay statements from a confidential informant indicating that the informant (1) observed cocaine inside Robbins's residence on four separate occasions, (2) saw Robbins retrieve cocaine from his home, (3) witnessed Robbins execute a narcotics transaction in his home, (4) observed a firearm in Robbins's residence, (5) learned that Robbins was anticipating a large cocaine shipment from his supplier, (6) confirmed that Robbins received that shipment, and (7) learned that Robbins stored that shipment in his home. The affidavit also indicated that the confidential informant had assisted Detective Awls in past investigations that resulted in the arrest and conviction of drug dealers, and that, for safety reasons, the informant's identity should not be revealed. Detective Awls concluded his affidavit by requesting permission to search Robbins's residence at night, alleging that the cover of darkness would provide safety to the searching officers.

The state court judge found probable cause to believe that Robbins was conducting illegal drug-trafficking activities at his residence, and on February 20, 2005, the judge issued a warrant authorizing a search for cocaine, drug paraphernalia, currency, and documents. The warrant "commanded" the officers "to search within three days . . . , making the search in the Night Season." The officers executed the search warrant in the afternoon of February 23, 2005, finding crack cocaine, powder cocaine, marijuana, drug paraphernalia, guns, and currency.

In April 2005, a federal grand jury returned an eight-count indictment against Robbins, charging him with multiple drug and firearm offenses. In May 2005, Robbins filed a motion to suppress the items discovered during the search of his residence, contending that the search warrant was not supported by probable cause, that the magistrate had relied on stale information in granting the warrant, and that the police did not execute the warrant "within the statutory time period." The magistrate judge recommended that the district court deny Robbins's motion, concluding that Detective Awls's affidavit contained sufficient non-stale information to support a finding of probable cause and that the officers executed the warrant within the allowable time period. In July 2005, the district court adopted the magistrate judge's report and recommendation, and denied Robbins's motion to suppress.

In December 2005, Robbins entered into a plea agreement with the government under which he agreed to plead guilty to three counts of the indictment and, in return, the government agreed to dismiss the remaining five counts. The plea agreement included a recommended sentence, stating: "The government agrees that in the event that the applicable sentencing guideline calculation results in a sentence higher than the statutory minimum term of imprisonment, that the defendant should receive the statutory minimum term of [180 months'] imprisonment." Despite this recommendation, the plea agreement expressly acknowledged that "sentencing is within the discretion of the Court" and that "neither the United States Probation Office nor the Court is bound by the stipulations herein." Moreover, Robbins waived his right to appeal his conviction or sentence except in three instances: (1) any sentence in excess of the statutory maximum; (2) any sentence above the applicable guidelines range; and (3) any challenge to the district court's denial of his motion to suppress.

At the change of plea hearing, Robbins pleaded guilty to (1) possessing with intent to distribute 143.7 grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1); (2) possessing a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924; and (3) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The district court engaged in a traditional plea colloquy, and when discussing Robbins's rights of appeal, the judge stated:

> You also would ordinarily have the right to appeal your sentence under certain circumstances . . . . However, a defendant in a criminal case has the right as part of a plea agreement to waive substantially all rights of appeal. And your plea agreement . . . does, in fact, contain a waiver of substantially all rights of appeal. However, those waivers are generally — while those waivers are generally upheld by this Court and the Court of Appeals, you will have an opportunity after sentencing to appeal both your conviction and your sentence and test the validity of your waivers.

The judge then discussed his discretion in sentencing Robbins, stating:

> This Court will generally not deviate significantly from the advisory guidelines unless I am convinced that such deviation is reasonable and appropriate in a given case. You should also understand that except in very extraordinary circumstances which have only occurred one or two times in the past more than 11 years, I will sentence you pursuant to the plea agreement, which I now will accept.

The district court then accepted Robbins's guilty plea, and ordered a presentence investigation report.

At the sentencing hearing, the district court reviewed the sentence as calculated by the presentence report, noting that the cocaine offense was subject to a mandatory minimum sentence of 120 months' imprisonment and a guidelines range of 140 to 175 months; the felon-in-possession offense carried a statutory maximum of 120 months; and Robbins's remaining offense — possession of a firearm in furtherance of a drug trafficking crime — carried a statutory minimum of 60 months, to run consecutively to any other term of imprisonment. The court opined that the criminal history category of V overstated Robbins's actual criminal history, and reduced the category to IV, which produced a guidelines range of 121-151 months for the cocaine offense. The court sentenced

4

Robbins to 121 months for the cocaine offense, a concurrent 120 months for being a felon in possession of a firearm, and the mandatory 60 consecutive months for possessing a firearm in furtherance of a drug trafficking crime, for a total of 181 months' imprisonment. Robbins did not object to his sentence.

## II.

On appeal, Robbins argues that the district court erred, first, in denying his motion to suppress and, second, by unreasonably imposing a sentence different from the one recommended in the plea agreement. We begin with the denial of Robbins's motion to suppress.

When evaluating a district court's ruling on a motion to suppress, we review the court's factual findings for clear error and its legal conclusions *de novo*. *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). We view "the evidence in the light most favorable to the government." *United States v. Buchanon*, 72 F.3d 1217, 1223 (6th Cir. 1995).

Robbins argues that the warrant was not supported by probable cause. According to Robbins, the affidavit accompanying the warrant request did not contain sufficient information to establish the informant's credibility and did not include independent corroboration of the informant's statements. In determining whether a supporting affidavit establishes probable cause to issue a search warrant we consider the totality-of-the-circumstances: "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "[A]fter-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review," *id.* at 236; instead we must afford the magistrate's probable cause determination "great deference" on

5

review, *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc); *Gates*, 462 U.S. at 236. Thus, "the duty of a reviewing court is simply to ensure that the magistrate had a *substantial basis* for concluding that probable cause existed." *Id.* at 238-39 (alterations and quotations omitted; emphasis added).

The affidavit "need not reflect the direct personal observations of a law enforcement official and may be based on a confidential informant's hearsay, so long as the issuing judicial officer is reasonably assured that the informant was credible and the information reliable." *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000). "The . . . evidence substantiating an informant's reliability need not be obtained from a source unrelated to the confidential informant — e.g., an independent police investigation or a second confidential informant — but may be any set of facts that support the accuracy of the information supplied by the informant." *United States v. May*, 399 F.3d 817, 824 (6th Cir. 2005); *see also United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005) ("[W]hile an affidavit must state facts supporting an independent judicial determination that the informant is reliable, those facts need not take any particular form.").

After carefully reviewing Detective Awls's affidavit, we find that it contained sufficient evidence from which the issuing judge could have concluded that the confidential informant was credible and his statements were reliable. Our circuit's precedent "clearly establishes that the affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable." *United States v. Greene*, 250 F.3d 471, 480 (6th Cir. 2001); *see United States v. Smith*, 182 F.3d 473, 483 (6th Cir. 1999) ("[I]f the prior track record of an informant adequately substantiates his credibility, other indicia of reliability are not necessarily required."). The statement in Detective Awls's affidavit that the confidential informant "ha[d] assisted [him] on investigations

6

that [led] to the arrest and conviction of [n]arcotics [t]raffickers" told the issuing judge that the informant had provided accurate and reliable information in the past. *See Williams*, 224 F.3d at 532-33 (finding a confidential informant reliable where the affidavit stated that the informant had provided information leading to "arrests and convictions"); *May*, 399 F.3d at 826 (finding a confidential informant reliable where the affidavit stated that the informant "provided assistance in unrelated drug investigation cases").

We have previously rejected the contention that the affiant must provide "details upon which the issuing judge could reasonably rely in determining that the confidential informant had proven reliable in the past," reasoning that the "affidavit need not include a detailed factual basis" for such an assertion. *See id.* at 826. This is precisely the argument Robbins urges here, and, as we have done in the past, we reject it. Moreover, the confidential informant's credibility here is buttressed by the facts that (1) his identity was known to Detective Awls (even though it was not known to the issuing judge), *see id.* at 824-25 (finding that "[t]he statements of an informant . . . , whose identity was known to the police and who would be subject to prosecution for making a false report, are . . . entitled to far greater weight than those of an anonymous source"), and (2) as admitted by Robbins, the informant observed Robbins's illegal activities first-hand and recounted these events in some detail, *see Gates*, 462 U.S. at 234 (stating that an informant's "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitled his tip to greater weight"). We conclude that Detective Awls's affidavit included evidence sufficient to permit the issuing judge to find the informant credible.

Because we have found sufficient evidence of the informant's reliability, we need not examine Robbins's additional argument that the informant's statements were not corroborated by

independent police investigation. Independent police corroboration of a confidential informant's statements is unnecessary where there is adequate indicia of the informant's reliability. *See Allen*, 211 F.3d at 976; *Frazier*, 423 F.3d at 532 ("[I]n the absence of any indicia of the informant['s] reliability, courts insist that the affidavit contain substantial independent police corroboration.") Accordingly, we conclude that the issuing judge "had a *substantial basis* for concluding that [the] search would uncover evidence of wrongdoing." *See Gates*, 462 U.S. at 236 (emphasis added; alterations and quotations omitted).

Robbins next argues that the district court should have granted his motion to suppress because the executing officers "exceed[ed] the strict bounds of the warrant." The warrant expressly "commanded" the officers to "search in the Night Season," and, according to Robbins, the executing officers violated the warrant's requirements by conducting their search in the afternoon. Robbins presented to the district court only three legal bases for his motion to suppress: (1) probable cause did not exist for the issuance of the warrant; (2) the officers provided stale evidence in support of their warrant request; and (3) the officers did not execute the warrant "within the statutory time period." He now argues that the third basis (i.e., that the warrant was executed outside the statutory time period), while not an explicit statement of the issue he raises on appeal, was sufficiently akin to it to preserve it for purposes of appeal. We are not persuaded. In his motion to suppress filed in the district court, Robbins devoted exactly one sentence to the claim that the warrant was not executed within the "statutory time period" — "Defendant further states that the search warrant was not executed within the statutory time period." He did not specify what that time period is, or in what statute it appears. The court held that the language of the warrant required that it be executed within three days, and the warrant was in fact executed timely.

That vague claim raised below is entirely different from Robbins's current argument that the search "exceed[ed] the strict bounds of the warrant." We therefore hold that Robbins has waived this argument on appeal. "[A] defendant who fails to raise a *specific issue* as the basis for suppression 'has waived the right to raise that issue on appeal,'" *United States v. Critton*, 43 F.3d 1089, 1093-94 (6th Cir. 1995) (quoting *United States v. Yannott*, 42 F.3d 999, 1005 (6th Cir. 1994)) (emphasis added). We have long held that "we have no jurisdiction to hear appeals of suppression issues raised for the first time on appeal." *Id.* at 1093.

### III.

Robbins next challenges his sentence, arguing that the district court acted unreasonably by failing to impose the sentence recommended in the plea agreement. At the plea colloquy, the district court stated that, except in "very extraordinary circumstances," it ordinarily sentenced in accordance with the plea agreement. Here, the plea agreement called for 180 months' imprisonment. The district court, however, sentenced Robbins to 181 months. Neither the government nor Robbins reminded the court of the plea agreement's recommended 180-month sentence, and Robbins raised no objection to his sentence at the hearing. On appeal, Robbins argues that the district court acted unreasonably by leading Robbins to believe that it was likely to impose the recommended sentence and then imposing a sentence one month greater.

Robbins waived his right to bring this argument on appeal. His plea agreement expressly acknowledged his understanding of his appeal rights, and expressly waived all of those rights except the right to appeal "any punishment in excess of the statutory maximum" or "any punishment to the extent it constitutes an upward departure from the Sentencing Guideline range deemed most applicable by the Court." Further, the plea agreement expressly reserved Robbins's "right to

9

challenge the District Court's denial of his motion to suppress . . . filed in this case." And finally, the plea agreement specified that "[n]othing in this paragraph shall act as a bar to the defendant perfecting any legal remedies he may otherwise have on appeal or collateral attack respecting claims of ineffective assistance of counsel or prosecutorial misconduct."

"It is well settled that a defendant in a criminal case may waive his right to appeal his sentence in a valid plea agreement." *United States v. Smith*, 344 F.3d 479, 483 (6th Cir. 2003). "When a defendant waives his right to appeal his sentence in a valid plea agreement, this [c]ourt is bound by that agreement and will not review the sentence except in limited circumstances." *Id.* (alterations omitted; alteration added); *see United States v. McGilvery*, 403 F.3d 361, 363 (6th Cir. 2005). Robbins's sentence does not exceed the statutory maximum or the applicable guidelines range, and he does not claim either prosecutorial misconduct or ineffective assistance of counsel. He thus has waived the right to appeal his sentence.

In an effort to avoid the clear language of the plea agreement, Robbins raises in his reply brief an entirely new contention: that during the plea hearing, the court "stated unconditionally that Defendant would have the right to appeal his sentence"; that neither the court nor the government made any effort to correct the error; and that, the government cannot now claim that Robbins waived his right to appeal his sentence. Robbins points to this statement made by the district court during the hearing at which Robbins pleaded guilty:

> [A] defendant in a criminal case has the right as part of a plea agreement to waive substantially all rights of appeal. And your plea agreement . . . does, in fact, contain a waiver of substantially all rights of appeal. However, those waivers are generally — while those waivers are generally upheld by this Court and the Court of Appeals, you will have an opportunity after sentencing to appeal both your conviction and your sentence and test the validity of your waivers.

10

But — wisely, we think — Robbins does not contend that he misunderstood his rights or that he believed the district court's statement altered the clear waiver in his plea agreement. The record demonstrates that Robbins both understood and assented to the terms of that agreement: during the plea hearing, he listened to the government's summary of the terms of the agreement; he told the court that he had read and understood the agreement, had discussed the agreement with his attorney, and did not have any questions regarding the agreement; and he then signed the plea agreement in open court. The district court's statement on which Robbins now relies cannot legitimately be read as an "unconditional" statement that Robbins would have the right to appeal his sentence; at best — from Robbins's point of view — that statement advised Robbins that he would have an opportunity to appeal the sentence and see whether his waiver was valid.

A valid waiver occurs only if the defendant entered into the plea agreement knowingly and voluntarily. *United States v. Fleming*, 239 F.3d 761, 764 (6th Cir. 2001); *Smith*, 344 F.3d at 483. There is simply nothing in this record indicating that Robbins did not knowingly and voluntarily enter into the plea agreement pursuant to which he pleaded guilty and waived his right to appeal his sentence. The district court did not have the authority unilaterally to confer on Robbins the appeal rights that he had explicitly waived in the agreement with the government, *see Fleming*, 239 F.3d at 764-65, and it is clear from the record in the trial court and Robbins's briefs before us on appeal that Robbins did not suffer from any illusions that the court had done so. Indeed, it was not until after Robbins had filed his appellate brief — in which his sole argument regarding his sentence is that the district court's sentence of one month in excess of that recommended in the plea agreement constituted plain error — that Robbins experienced his epiphany regarding the waiver of his appeal rights. We therefore conclude that Robbins understood the waiver of his rights of appeal, and the

district court's rendition of those rights did not obfuscate Robbins's understanding of the express terms of the written plea agreement. *Cf. United States v. Dellheim*, 187 F. App'x 573, 577-78 (6th Cir. 2006) (unpublished decision) (finding that the court's mischaracterization of the defendant's rights of appeal under a plea agreement and *the government's assent to the court's mischaracterization* effectively reinterpreted the agreement's waiver provision).

Even if we were to assume that Robbins's waiver was ineffectual, we would find no merit in his underlying argument. Robbins does not argue that the district court or the government breached the express terms of the agreement, *see United States v. Swanberg*, 370 F.3d 622, 626-29 (6th Cir. 2004); instead he merely contends that the district court — after stating that it typically follows sentences recommended in plea agreements — acted unreasonably by not imposing the recommended sentence in this case. For clarification, we note that Robbins, while using the term "unreasonable," does not — and, we hasten to add, could not — raise a *Booker*-type challenge. *See United States v. Booker*, 543 U.S. 220 (2005); *United States v. Collington*, 461 F.3d 805 (6th Cir. 2006). And, as he acknowledges in his principal brief on appeal, because he did not object to his sentence before the district court, we review only for plain error. *United States v. Olano*, 507 U.S. 725, 733-34 (1993).

Tellingly, Robbins does not cite any case law to support his claim that a sentencing judge acts unreasonably when he imposes a sentence one month greater than that recommended in a plea agreement not binding on the judge, and we find no reason to conclude that the district court acted unreasonably here. First, the district court's statement during the plea hearing that it typically imposes the recommended sentence did not purport, in any way, to curtail the district court's discretion or imply that the district court viewed that statement as a binding promise. Second,

12

Robbins concedes that at the sentencing hearing he neither asked the court to impose the sentence recommended in the plea agreement nor objected to the district court's failure to do so. Robbins himself conjectures that the district court did not refuse to impose the recommended sentence, but simply forgot about it. Finally, the district court's sentence of 181 months' imprisonment was the lowest sentence available in the applicable guidelines range after the reduction in criminal history category that the district court insisted on, and exceeded the recommended sentence — the statutory minimum sentences for the firearms offenses — by only one month. We find nothing unreasonable about either the sentence or its imposition, and we find this claim of error utterly meritless.

## IV.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.