**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 13a0951n.06**

**No. 11-5791**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) |
| | ) **ON APPEAL FROM THE UNITED** |
| TOI MELVIN, | ) **STATES DISTRICT COURT FOR THE** |
| | ) **EASTERN DISTRICT OF TENNESSEE** |
| Defendant-Appellant. | ) |
| | ) |
| | ) |

**FILED**
Nov 05, 2013
DEBORAH S. HUNT, Clerk

Before:  KEITH, GUY, and GIBBONS, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.**  Toi Melvin pled guilty to crack cocaine

offenses and signed a plea agreement in which he waived his right to appeal unless his sentence

exceeded the Guidelines sentencing range "as determined by the district court."  Melvin also waived

his right to petition for a writ of *habeas corpus* on any grounds other than ineffective assistance of

counsel or prosecutorial misconduct.  Despite the clarity of the written waivers, the district court

informed Melvin at his subsequent change-of-plea hearing, and Melvin affirmed, that he was

waiving any right to appeal or to seek relief under 28 U.S.C. § 2255 other than for ineffective

assistance of counsel, prosecutorial misconduct, *or a change in the law*.

Melvin remained in custody awaiting sentencing for almost three years.  During that time

Congress enacted the Fair Sentencing Act of 2010 (FSA), which increased the quantity of crack

cocaine that triggers enhanced penalties under 21 U.S.C. § 841.  In September 2010, this court held

that the FSA did not affect the penalties associated with crimes committed before the statute was enacted. *See United States v. Carradine*, 621 F.3d 575, 580 (6th Cir. 2010). Accordingly, in May 2011 the district court, pursuant to the pre-FSA penalties, sentenced Melvin to 262 months of imprisonment—the bottom of his Guidelines sentencing range. Melvin then filed this direct appeal.

While Melvin's appeal was pending, the Supreme Court held that the new drug-quantity thresholds established in the FSA must be applied to offenders who committed the relevant crimes before the effective date of the FSA but who are sentenced after that date. *See Dorsey v. United States*, 132 S. Ct. 2321, 2335 (2012). Melvin now seeks the benefit of the *Dorsey* holding. The United States has moved to dismiss the appeal on the basis that Melvin waived his right to appeal his sentence when he signed his written plea agreement. For the reasons set forth below, we deny the Government's motion to dismiss the appeal, vacate the district court's sentence, and remand the case with instructions to re-sentence Melvin pursuant to the new thresholds established in the FSA.

**I.**

Through the use of a confidential informant, law enforcement agents purchased crack cocaine from Melvin on three separate occasions in late 2007. Subsequent laboratory analysis revealed the quantities of each purchase to be 10.6 grams, 10.0 grams, and 22.9 grams. A federal grand jury returned an indictment against Melvin in November 2007, charging him with three counts of distributing five grams or more of a substance containing cocaine base (crack cocaine), a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Later that month the United States Attorney notified Melvin that the United States intended to seek an enhanced punishment on account of Melvin's prior felony drug convictions.

In July 2008, Melvin signed a written plea agreement in which he agreed to plead guilty to all three counts of the indictment. Because Melvin had two prior felony drug convictions, the plea agreement stated that Melvin was subject to a minimum term of imprisonment of ten years for each count. The United States agreed to support a three-level reduction for acceptance of responsibility pursuant to Guidelines § 3E1.1(a) and (b). Melvin, in turn, agreed not to file a direct appeal of his conviction or sentence unless the district court imposed a sentence "above the sentencing guideline range as determined by the district court." Melvin also waived his right to seek relief under 28 U.S.C. § 2255 except with respect to any claim of ineffective assistance of counsel or prosecutorial misconduct. The plea agreement concluded with the stipulation that "the terms of this plea agreement can be modified only in writing signed by all of the parties and . . . any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void."

Melvin appeared before the district court in July 2008 to change his plea. At that hearing Melvin confirmed that his attorney had explained the terms of the plea agreement to him. The court explained to Melvin that it would not consider whether to accept the plea agreement at that time, but that Melvin would be afforded an opportunity to withdraw his guilty plea if the court later decided not to accept the plea agreement. The court then asked: "Now, Mr. Melvin, do you understand that, under the terms of your plea agreement, as contained in Paragraph 13 of the plea agreement, you are waiving your right to file a direct appeal or any motions or pleadings, pursuant to 28 United States Code Section 2255, except for ineffective assistance of counsel, prosecutorial misconduct[,] or a change in the law?" Melvin replied, "Yes, your Honor." Neither party objected to the district

court's representation of the scope of the appeal-waiver provision, and the court subsequently accepted Melvin's guilty plea.

The United States Probation Office submitted Melvin's presentence investigation report in October 2008. At the time Melvin committed the offenses, the statutory maximum prison term for distribution of five or more grams of crack cocaine was forty years. 21 U.S.C. § 841(b)(1)(B) (2006 ed.). Because Melvin had two prior qualifying convictions, however, and because the government filed notice pursuant to 21 U.S.C. § 851 of its intent to seek an enhanced punishment, the statutory maximum punishment for Melvin's offenses was enhanced to life imprisonment. In tandem with Melvin's undisputed status under the Guidelines as a career offender, this resulted in a base offense level of 37 and mandatory criminal history category of VI. *See* U.S.S.G. § 4B1.1 (2007). After accounting for a three-level reduction for acceptance of responsibility, the probation officer determined that Melvin's total offense level was 34 and that the applicable Guidelines sentencing range was 262 to 327 months of imprisonment.

Melvin's sentencing hearing was continued more than a dozen times, and Melvin consequently did not appear before the district court for sentencing until May 2011. Nine months earlier, in August 2010, the President signed into law the Fair Sentencing Act of 2010 (FSA), Pub. L. 111-220, 124 Stat. 2372. That statute significantly changed the sentencing landscape for federal crack cocaine offenses, most notably by increasing the quantity of crack cocaine that triggered certain mandatory minimum terms of incarceration. In July 2010, while Congress debated the FSA, Melvin wrote to the district court and asked to be sentenced under the revised FSA framework. But any belief on Melvin's part that he would benefit from this statute proved short-lived. This court held in September 2010 that the quantity thresholds established in the FSA did not apply to offenses

committed before the statute was enacted. *See Carradine*, 621 F.3d at 580. *Carradine* thus precluded Melvin from reaping any benefit from the enactment of the FSA.

Melvin wrote the court again, through counsel, when he submitted his sentencing memorandum shortly before the sentencing hearing. Melvin noted the significant disparity between a Guidelines sentencing range of 84 to 105 months, which ostensibly would have applied in the absence of the career offender enhancement, and the range of 262 to 327 months to which he was subject as a career offender. Melvin also attributed his drug offenses to a history of addiction, and he argued that his convictions for dealing relatively small quantities of crack cocaine were "atypical of the career offender envisioned" by the Sentencing Guidelines. He therefore believed the range of 262 to 327 months to be "draconian" and "unduly harsh." Finally, Melvin stated that the forty-two months he spent in "'local' confinement facilities" awaiting sentencing were "substantially more restrictive than confinement in a Federal Bureau of Prisons facility." In consideration of all of these factors, Melvin requested a downward departure under Guidelines § 4A1.3, a downward variance pursuant to 18 U.S.C. § 3553(a), and a total sentence of 200 months of imprisonment.

When he ultimately appeared before the district court for sentencing in May 2011, Melvin did not propose any corrections or modifications to the presentence report. The court then confirmed that Melvin would be treated as a career offender, and the court denied Melvin's motions for a downward departure and downward variance because Melvin had not offered proper justifications for either the departure or the variance. The court sentenced Melvin to 262 months' imprisonment, which "reflect[ed] the bottom of the guideline range," because "this sentence will afford adequate deterrence and provide just punishment." The court also accepted the plea agreement.

Although Melvin timely filed a notice of appeal, various circumstances led to delays in the processing of his appeal. Consequently, the clerk's office did not set a briefing schedule in this appeal until August 2012. In the meantime, the Supreme Court handed down its decision in *Dorsey v. United States*, 132 S. Ct. 2321 (2012), in June 2012. That decision abrogated *Carradine* and held that persons who committed crack cocaine offenses before the effective date of the FSA but who are sentenced after that date are entitled to have their sentences calculated in accordance with the revised drug-quantity thresholds established in the FSA.

After Melvin submitted his brief in this appeal, the United States moved to dismiss the appeal on the ground that Melvin had waived his right to appeal his sentence when he signed the written plea agreement. Melvin opposed the motion, and a panel of this court determined that the motion should be considered in conjunction with the consideration of the merits of the appeal. At oral argument, the United States withdrew its opposition to the merits of Melvin's appeal and conceded that the case should be remanded to the district court for re-sentencing if we conclude that Melvin did not waive his right to file this appeal. Accordingly, we need not address the merits of the appeal.

## II.

The United States has moved to dismiss the appeal because Melvin signed a written plea agreement in which he waived his right to appeal the sentence unless the district court imposed a sentence "above the sentencing guideline range as determined by the district court." A defendant may surrender any right in a plea agreement provided that the waiver is made knowingly and voluntarily. *United States v. Wilson*, 438 F.3d 672, 673 (6th Cir. 2006). This includes the right to appeal. *See id.* at 674. But the defendant's signature on the plea agreement, by itself, is insufficient

to establish that the defendant's waiver of the right to appeal was knowing and voluntary. *United States v. Murdock*, 398 F.3d 491, 498 (6th Cir. 2005). Before the district court may accept a defendant's guilty plea and the attendant plea agreement, "the court must inform the defendant of, and determine that the defendant understands, . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1)(N).

A district court's putative violation of Rule 11 is reviewed for plain error if the defendant did not object before the district court. *Murdock*, 398 F.3d at 496. The defendant bears the burden of proof and must demonstrate (1) error (2) that is plain and (3) that affects substantial rights. *Id.* An appellate court then may exercise its discretion to notice a forfeited error only if (4) "the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id.* (internal quotation marks omitted).

With respect to the first two elements of the plain-error analysis, a district court's failure to comply with Rule 11(b)(1)(N) constitutes an error that is plain. *Id.* at 497. The initial question, then, is whether the district court violated Rule 11(b)(1)(N) when it instructed Melvin that he retained the right to appeal a change in the law, despite the plea agreement's waiver of that right. Although this court has never directly addressed whether an expansion of the exceptions to an appeal-waiver provision is a violation of Rule 11(b)(1)(N), the district court's inaccurate recapitulation of the terms of an appeal-waiver provision, which necessarily hinders the objective of Rule 11(b)(1)(N)'s mandate, is no less an error than the failure to inform the defendant of the waiver terms in the first place. *Cf. id.* at 497. In an unpublished decision, moreover, this court has held that a perfunctory or incomplete description of the scope of the appeal-waiver provision is plain error. *See United States v. Cohen*, 515 F. App'x 405, 409 (6th Cir. 2013). And in *Sarlog v. United*

*States*, although the court did not analyze the defendant's waiver pursuant to the Rule 11 or plain-error frameworks, the court held that the district court's misstatement about the scope of the waiver prevented the defendant from making a knowing and voluntary waiver of his rights. 422 F. App'x 399, 403 (6th Cir. 2011) (per curiam). It follows that a district court's failure to inform a defendant of the proper scope of the appeal-waiver provision constitutes a Rule 11(b)(1)(N) violation and thus is plain error.

Yet not all violations of Rule 11(b)(1)(N) warrant reversal because not all violations affect the defendant's substantial rights. A Rule 11(b)(1)(N) violation affects a defendant's substantial rights only if the plea colloquy included no "functional substitute" for the Rule 11 safeguard. *Murdock*, 398 F.3d at 497. Accordingly, this court has held that "where the defendant states that he had reviewed the plea agreement with his attorney and that his attorney had explained the agreement, or where the prosecutor refers to the waiver provision in summarizing the terms of the plea agreement, this may be sufficient to insure that the waiver was knowing and voluntary." *United States v. Robinson*, 455 F.3d 602, 610 (6th Cir. 2006); *see also United States v. Sharp*, 442 F.3d 946, 949–52 (6th Cir. 2006); *Wilson*, 438 F.3d at 674. In *Murdock* we likewise stated that it might "be sufficient for a defendant to assure the district court that he has reviewed the waiver provision (or, at a bare minimum, the plea agreement) with his attorney and that his attorney has explained it." 398 F.3d at 498.

Despite that *dicta*, however, we have never held that the defendant's on-the-record confirmation of his prior review of the plea agreement with his attorney is a "functional substitute" for the Rule 11(b)(1)(N) colloquy. In *Robinson*, *Sharp*, and *Wilson*, we held the waiver to be valid only because the prosecutor correctly described the scope of the appeal-waiver provision during the

-8-

plea colloquy. At Melvin's change-of-plea hearing, by contrast, the prosecutor did not correct the district court's inaccurate description of the appeal-waiver provision in the plea agreement.

*Murdock* also did not address or contemplate the situation where the district court inaccurately described the scope of the appeal-waiver provision during the plea colloquy. We addressed that issue in a more recent unpublished decision. In *Sarlog v. United States*, we stated:

> It is true that courts may not modify plea agreements, and that statements made by the court do not supercede the terms of an agreement when the waiver is knowingly and voluntarily made. However, where . . . the court's misstatement comes *before* the plea is accepted and in circumstances that cause the defendant to misunderstand the terms based on the court's explanation, the defendant cannot be said to have knowingly and voluntarily waived the rights that the court purported to tell him he retained.

422 F. App'x at 403 (internal citation omitted).

*Sarlog* is consistent with our decision in *United States v. Fleming*, 239 F.3d 761, 764–65 (6th Cir. 2001), where we held that a district court's post-sentencing formulaic recitation of the parties' right to appeal the sentence cannot reinstate a right to appeal that the defendant previously waived in the plea agreement. In Melvin's case, unlike *Fleming*, the district court's misstatement came before its acceptance of his guilty plea, and nearly three years before its acceptance of the plea agreement. Cases in other circuits have, like *Sarlog*, differentiated between misstatements by the district court that come before the plea is accepted and those that come after acceptance of the plea. *See, e.g.*, *United States v. Wilken*, 498 F.3d 1160, 1167–69 (10th Cir. 2007).

In *United States v. Saferstein*, for example, the plea agreement stated that the waiver was "not intended to bar the assertion of constitutional claims that the relevant case law holds cannot be waived." 673 F.3d 237, 242 (3d Cir. 2012). During the Rule 11 plea colloquy, however, the district court stated that the appellate waiver "of course, is not intended to bar you [from] raising

constitutional claims, and only the Court can decide whether they are constitutional claims or some other kind of claim." *Id.* (alteration in original). The Third Circuit held that "a statement made by the sentencing court during the colloquy can create ambiguity where none exists in the plain text of the agreement." *Id.* at 243. The court construed the ambiguity in the defendant's favor and held that the district court's narrower interpretation of the appeal-waiver provision in open court controlled the scope of that waiver.[1] *Id.*

In *United States v. Padilla-Colon*, the First Circuit similarly considered whether the district court's misstatement was "sufficiently misleading to nullify [the] waiver." 578 F.3d 23, 28 (1st Cir. 2009). Focusing on the context in which the misstatement was made, the First Circuit found that the waiver was not knowing and voluntary because the district court plainly stated that the defendant retained the right to appeal an adverse safety-valve determination when, in fact, the defendant had waived that right in the plea agreement. *Id.* at 29. And in *United States v. Manigan*, the Fourth Circuit stated, "When a district court has advised a defendant that, contrary to the plea agreement, he is entitled to appeal his sentence, the defendant can hardly be said to have knowingly waived his right of appeal." 592 F.3d 621, 628 (4th Cir. 2010).

---

[1]The United States contends that the district court's misstatement at Melvin's change-of-plea hearing did not create an ambiguity because the language in the plea agreement was unambiguous and the district court used "slightly different words than those in the plea agreement." No one disputes whether the appeal-waiver provision was pellucidly clear. The problem is that the district court created ambiguity where none previously had existed because the district court mistakenly misstated the straightforward appeal-waiver provision. With respect to whether the district court's recapitulation of the appeal-waiver provision was "slightly" or "substantially" inaccurate, we need not thrust ourselves into that semantic debate. Slight though the misstatement may have been, the only relevant inquiry is whether Melvin's appeal falls within the appeal-waiver exceptions articulated by the district court.

This logic comports with the essence if not the exact letter of *Murdock*. At the change-of-plea hearing, Melvin's attorney never confirmed to the district court that he had reviewed the appeal-waiver provision with Melvin, but Melvin did confirm that his attorney had explained the terms of the plea agreement to him. *Murdock* posited in *dicta* that such an assurance might, "at a bare minimum," permit the district court to satisfy itself of the knowingness and voluntariness of the defendant's appeal waiver. *See* 398 F.3d at 498. But neither *Murdock* nor the other cases addressing the district court's omission of the Rule 11(b)(1)(N) colloquy are apposite where the district court conducts that inquiry yet inaccurately describes the scope of the appeal waiver. The weight of the authority in this circuit and others leads inexorably to the conclusion that the district court's inadvertent expansion of the exceptions to an appeal-waiver provision in a plea agreement controls the actual scope of the defendant's waiver, provided that the district court misstates the scope of that waiver *before* accepting the defendant's guilty plea.

Accordingly, Melvin has not waived his right to file this appeal. The district court informed Melvin that he would be permitted to file a direct appeal based on a subsequent change in the law. Although the district court's original sentence was consistent with the law of this circuit at the time of Melvin's sentencing, the law changed when the Supreme Court abrogated *Carradine* and held that persons such as Melvin are entitled to reap the benefits of the FSA's revised drug-quantity thresholds. However trivial the district court's misstatement seems to be, that misstatement prevents us from concluding that Melvin's appeal waiver was knowing and voluntary. Melvin's current appeal is predicated upon a change in the law and therefore fits within the exception that the district court inadvertently carved into the plea agreement's appeal-waiver provision.

**III.**

For the reasons stated above, the Government's motion to dismiss Melvin's appeal is **DENIED**. Because the United States conceded at oral argument that the district court committed plain error when it sentenced Melvin in accordance with the pre-FSA drug-quantity thresholds and penalties, we need not assess the merits of Melvin's appeal. We **VACATE** Melvin's sentence and **REMAND** this case to the district court with instructions to re-sentence Melvin in accordance with the post-FSA drug-quantity thresholds and applicable Sentencing Guidelines.