RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0161p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SCOTT R. DETLOFF,

*Defendant-Appellant.*

Nos. 14-2001/2002

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:13-cr-20718—Sean F. Cox, District Judge.

Decided and Filed:  July 24, 2015

Before:  CLAY and MCKEAGUE, Circuit Judges; BERTELSMAN, District Judge.[*]

_____

### COUNSEL

**ON BRIEF:**  Kevin M. Schad, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cincinnati, Ohio, for Appellant.  C. Barrington Wilkins, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

_____

### OPINION

_____

CLAY, Circuit Judge.  Defendant Scott Detloff ("Defendant") appeals from his conviction and sentence, entered pursuant to a Rule 11 plea agreement, for mail theft, in violation of  18 U.S.C. § 1708.  He also appeals from the 24-month custodial sentence imposed

---

[*] The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

for his violation of supervised release. The government concedes that the sentence for the supervised release violation resulted from a mistaken guidelines calculation.

For the reasons that follow, we **DISMISS** Defendant's appeal of his conviction and sentence for mail theft, and we **VACATE** the sentence imposed for violation of supervised release and **REMAND** to the district court for recalculation of the guidelines and resentencing.

## BACKGROUND

Defendant was stopped by police while driving in Novi, Michigan on October 11, 2009 after a records check indicated that his license plate had been reported stolen. Defendant fled on foot, but eventually surrendered after the police, using a dog, gave chase. A search of Defendant's vehicle led to the discovery of eight falsified driver's licenses and more than thirty pieces of mail, most of which were addressed to businesses in Wixom, Michigan. Defendant stipulated in the Rule 11 plea agreement in this case that he possessed these items of mail knowing them to have been stolen. The day following his arrest, police conducted a search of Defendant's home in Howell, Michigan that revealed "one-hundred and twelve (112) stolen business checks; check stock; a Fargo Pro LX laminator; a Hewlett Packard scanner; a Hewlett Packard laser printer; and, a magnetic strip encoder." (R. 59, Plea Agreement, PageID 198.)

The traffic stop resulted in separate state charges based on Defendant's conduct in attempting to evade arrest. In December 2009, Defendant pled guilty to resisting a police officer in violation of Mich. Comp. Laws § 750.81d. He was sentenced to serve a term of imprisonment between three and fifteen years.

A federal complaint for mail theft was filed on August 29, 2011. For reasons that are not fully explained in this appeal and are ultimately unnecessary to our disposition of the case, nine months passed before Defendant was brought in for an initial appearance on May 23, 2012.[1] On April 18, 2013, a federal grand jury returned an indictment charging Defendant with (1) the use of a counterfeit access device, in violation of 18 U.S.C. § 1029(a)(1); (2) aggravated identity theft, in violation of 18 U.S.C. § 1028A; (3) the commission of bank fraud, in violation of

---

[1]At the sentencing hearing, government's counsel explained in general terms that he issued several writs of habeas corpus *ad prosequendum* that were not successfully served due to difficulties caused by Defendant's shifting location within Ohio and Michigan state prison systems.

18 U.S.C. § 1344; (4) theft of United States mail, in violation of 18 U.S.C. § 1708; and (5) possession of stolen checks, in violation of 18 U.S.C. § 513a.

Defendant entered a plea of guilty to the charge of mail theft on March 13, 2014, pursuant to a Rule 11 plea agreement. In exchange for his plea, the government agreed to dismiss the remaining charges. The parties agreed to a guidelines range of 57 to 71 months, reserving Defendant's right to dispute two elements of the guidelines calculation at sentencing. Specifically, in paragraph 2(B), the plea agreement carves out a right for Defendant to dispute (1) a two-level enhancement based on the premise that there were ten or more victims of Defendant's criminal conduct, and (2) the aggregate amount of loss calculated by the government. Defendant also agreed, as part of the Rule 11 plea, to waive appeal of his conviction, and to waive appeal of his sentence unless it exceeded the agreed-to range of 57 to 71 months. In the written version of the Rule 11 plea, Defendant also agreed to "waive any appeal of the court's final orders related to the sentencing guidelines disputes, referred to in Paragraph 2(B)." (R. 59 at 198-99.)

The district court reviewed the appeal-waiver provisions as part of the Rule 11 colloquy on March 13, 2014. Directing Defendant to the corresponding page of the Rule 11 agreement, the district court read out loud, "Defendant, being you, waives any right he may have to appeal his conviction. If the sentence imposed does not exceed the maximum allowed by part three of this agreement, the defendant also waives any right he may have to appeal his sentence." (R. 93, Plea Transcript, PageID 450.) These statements accurately conveyed the appeal waiver. The district court, however, made a misstatement in reading the next sentence, stating that "defendant agrees *not* to waive any appeal of the Court's final order or orders related to the sentencing guidelines disputes referred to in paragraph 2(b)." (*Id.*) (The written version, of course, stated the opposite—that Defendant *did* waive the right to appeal the district court's final orders of the two disputed guidelines issues.) The district court then asked Defendant, "Sir, did you hear what I just read to you?" (*Id.*) Defendant answered that he did, and in response to the district court's inquiry, confirmed that he did not have any questions about the provision. After concluding the Rule 11 colloquy, the district court accepted Defendant's plea and took the agreement under

advisement. At the same hearing, Defendant entered a plea of guilty to the charged supervised release violation.

On June 25, 2014, three months after he entered his guilty plea, Defendant filed a *pro se* motion to withdraw his guilty plea and dismiss the indictment. Defendant argued that the government's handling of the case, and in particular the lengthy delays between the federal complaint, the indictment, and his initial appearance, violated the Interstate Agreement on Detainers, the Speedy Trial Act, and the Speedy Trial Clause of the Sixth Amendment. Defendant disclosed that his appointed attorney, Mark Satawa, had refused to file the motion on his behalf based on Satawa's position that no violation had occurred.

On July 3, 2014, Satawa filed a motion to withdraw as defense counsel, citing conflicts with his client over Satawa's refusal to file the motion to withdraw the guilty plea or to file certain objections to the presentence report that Satawa believed to lack a proper foundation in the facts and the law. The motion informed the district court that Satawa believed his continued representation of Defendant would conflict with his obligations under Michigan Rules of Professional Conduct and jeopardize Defendant's constitutional right to effective counsel.

At a hearing on the motion on July 14, 2014, Satawa reiterated his concerns about his client's insistence that he file motions and objections that he believed to be improper. Defendant informed the court that he wanted Satawa to continue representing him. The district court denied Satawa's motion to withdraw as defense counsel, and ordered that Satawa act as stand-by counsel on Defendant's *pro se* motion to withdraw the plea agreement and on Defendant's *pro se* objections to the presentence report.

The sentencing hearing was held two days later, on July 16, 2014. At the beginning of the proceedings, the district court informed Defendant that he would be denying the motion to withdraw his guilty plea in a written order. The district court entertained objections to the presentence investigation report from both Satawa and Defendant, took argument on the appropriate sentence, and sentenced Defendant to 60 months in prison on the mail theft charge, to run concurrently with any undischarged state sentence. On two occasions during this proceeding Satawa expressed disagreement with concerns or arguments raised *pro se* by Defendant, as will be further discussed below.

The hearing then turned to the supervised release charge. Satawa initially informed the court that his client disputed the classification of his violation as Grade A, but quickly reversed course and informed the court that the violation was indeed properly classified as Grade A. The district court imposed a 24-month sentence, at the bottom of the guidelines range for a Grade A violation, to be served consecutively to the mail theft sentence.

Defendant timely noticed his appeal. We granted Satawa's motion to withdraw, and appointed new counsel to represent Defendant on appeal.

## DISCUSSION

### I.    Waiver of Appeal as to Defendant's Mail Theft Conviction and Sentence

The government argues that Defendant's waiver of the right to appeal in his Rule 11 plea agreement precludes our review of his claims that the district court abused its discretion in denying his motion to withdraw his plea and that the district court's sentencing decision was procedurally unreasonable. We agree.

We apply *de novo* review to the issue of whether a criminal defendant has waived appellate rights in a valid plea agreement. *United States v. Murdock*, 398 F.3d 491, 496 (6th Cir. 2005). If valid, Defendant's waiver of his right to appeal his conviction extends to his claim that the district court abused its discretion in denying his motion to withdraw his guilty plea. *United States v. Toth*, 668 F.3d 374, 378-79 (6th Cir. 2012). A defendant may challenge a waiver of appeal rights "on the grounds that it was not knowing and voluntary, was not taken in compliance with Fed.R.Crim.P. 11, or was the product of ineffective assistance of counsel." *United States v. Atkinson*, 354 F. App'x 250, 252 (6th Cir. 2009) (citing *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007)).

Here, Defendant argues that the district court's misstatement during the plea colloquy violated the requirement in Rule 11(b)(1)(N) that the district court "must inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal." Because Defendant did not object to the misstatement at the plea hearing, he must meet the requirements of plain error review by showing (1) error (2) that is plain, and (3) that affects his substantial rights. *Murdock,* 398 F.3d at 496. If he makes that

showing, this Court may then exercise its discretion to notice the error only where "the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id.* (internal quotation marks omitted).

In *United States v. Melvin*, 557 F. App'x 390 (6th Cir. 2013), this Court held that "a district court's failure to comply with Rule 11(b)(1)(N) constitutes an error that is plain." 557 F. App'x at 393. In that case, we found that the district court's inaccurate description of the scope of the appeal waiver in the plea colloquy affected the defendant's substantial rights where no accurate statement of the provision's scope was made and adopted by the defendant on the record. *Id.* at 394-96 (collecting cases). Because we concluded that the district court's misstatement in that case precluded a determination that the defendant's appeal waiver was knowing and voluntary, we held that we could not dismiss an appellate claim falling "within the exception that the district court inadvertently carved into the plea agreement's appeal-waiver provision." *Id.* at 396.

In the instant case, the district court accurately informed Defendant that in accepting the Rule 11 agreement he was waiving "any right he may have to appeal his conviction," and, provided the sentence imposed did not exceed the agreed-upon guidelines range, "any right he may have to appeal his sentence." (R. 93 at 450.) However, as in *Melvin*, the district court inadvertently created an exception by stating that Defendant agreed "not" to waive appeal of the court's final orders related to the two discrete sentencing guidelines disputes identified in paragraph 2(B). (*Id.*)

Defendant's appellate claims are not salvaged by the district court's error. He does not challenge the district court's final determination either as to the number of victims or as to the loss calculation; therefore, he cannot claim the benefit of an exception created by the district court's misstatement. *Cf. Melvin*, 557 F. App'x at 396 (vacating sentence based on an error that came within the exception inadvertently created by the district court). He did, in contrast, acknowledge on the record that he was waiving any right to appeal his conviction and any right to appeal a sentence of less than 71 months. Because his waiver of these rights was knowing and voluntary, his claims of error regarding his conviction and the procedural reasonableness of the district court's sentencing determination must be dismissed.

## II.     Constructive Denial of Counsel at Sentencing

Defendant argues that he was constructively denied counsel at sentencing, a critical stage of the proceedings, in violation of his rights under the Sixth Amendment. *See Van v. Jones*, 475 F.3d 292, 299 (6th Cir. 2007) (discussing sentencing as a critical stage); *Moss v. Hofbauer*, 286 F.3d 851, 860 (6th Cir. 2008) (citing *United States v. Cronic*, 466 U.S. 658-62 (1984)) (recognizing the theory of constructive denial of counsel). Constructive denial of counsel occurs where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," or another "constitutional error of the first magnitude" violating the right to counsel is shown. *Hofbauer*, 286 F.3d at 860 (quotation marks omitted); *see, e.g. Rickman v. Bell*, 131 F.3d 1150 (6th Cir. 1997) (finding a *per se* violation of the right to counsel where the defense attorney displayed continual hostility to and contempt for his client); *United States v. Herrera-Zuniga*, 571 F.3d 568, 591-93 (6th Cir. 2009) (discussing possibility that defense counsel's submission of a letter to the court castigating his client and describing him as unworthy of empathy and "at the bottom of society's hierarchy" as apparent professional malfeasance potentially constituting *per se* ineffectiveness). Constructive denial of counsel constitutes structural error requiring no further showing of prejudice. *Hofbauer*, 286 F.3d at 860.

Defendant argues that the district court should have granted Satawa's motion to withdraw as defense counsel when, at the hearing on that motion, Satawa's conduct made clear that he was not acting in his client's best interests. At that hearing, Satawa informed the court that his client's arguments in support of his motion to withdraw his guilty plea were without merit, stating that "[t]he Interstate Agreement on Detainers does not apply to Mr. Detloff," and that Satawa did "not believe" Defendant had "a good faith basis to withdraw his guilty plea." (R. 90, Hearing Transcript, PageID 379-80.) Satawa went so far as to accuse his client of "gaming the system" by both insisting on asserting certain legal positions and requesting that Satawa continue as his lawyer. (*Id.*) Despite the visibly troubled relationship between attorney and client, the district court ordered Satawa to continue representing Defendant and to serve as standby counsel on Defendant's *pro se* motions and objections.

The tensions between lawyer and client continued to be apparent at the sentencing hearing when Satawa voiced disagreement with positions or concerns raised *pro se* by

Defendant. The first instance arose when Defendant was arguing his *pro se* objection challenging the calculation of loss and the number of victims for the mail theft charge and informed the court that he had not seen a list of the victims and did not know how the government was arriving at the amount of loss. In what the government describes as an act of candor, Satawa interjected to inform the court that he had personally reviewed the discovery in the case and verified the existence of the documents underlying the calculation. Next, still during the sentencing for the mail theft charge, Satawa prefaced his argument for a downward variance by reminding the court, apparently gratuitously, that he "disagree[d] with [Defendant] about his interpretation of the Interstate Agreement on Detainers." (R. 91, Sentencing Transcript, PageID 396.) Defendant argues that by making these two statements adverse to his client's interest, Satawa showed that he was failing to act as counsel.

The most serious disagreement between attorney and client occurred after the proceeding turned to the supervised release violation. Satawa informed the district court that his client disputed that his state conviction for resisting a police officer constituted a Grade A violation, and believed instead that it was a Grade B violation. He offered no argument in support of this position. The government described the conviction as for a "violent offense," which elicited an objection from Defendant. (*Id.* at 411.) Satawa informed the district court that the government was "correct." (*Id.* at 412.) Satawa excused himself by reporting that Defendant had not previously raised this concern with Satawa, and then again affirmatively represented to the court that his client was mistaken, and it was a Grade A violation. We note that the government now concedes that its classification of Defendant's state conviction as a Grade A violation was error because the charge was not for a crime of violence under this Court's precedent.

As a general rule, this Court declines to rule on claims of ineffective assistance of counsel on direct appeal. *United States v. Hunter*, 558 F.3d 495, 508 (6th Cir. 2009). "We take this course when, as is often the case, the record is insufficient to assess the merits of the claim." *United States v. Smith*, 600 F. App'x 991, 993 (6th Cir. 2015) (citing *United States v. Warman*, 578 F.3d 320, 348 (6th Cir. 2009)). Deferring such a fact-intensive issue to a post-conviction proceeding may be appropriate even where the defendant raises a claim of constructive denial of counsel, which is not subject to the two-pronged inquiry under *Strickland v. Washington*, 466

U.S. 668, 687 (1984). *See, e.g.*, *Herrera-Zuniga*, 571 F.3d at 591-93 (declining to rule on whether counsel was *per se* ineffective in order to allow development of a record in post-convictions proceedings). Because we find that the record in this case is inadequate to permit our review of Defendant's claim of ineffective assistance of counsel, we dismiss the claim without prejudice. Defendant may raise the claim in post-conviction proceedings should he so choose. *See Smith*, 600 F. App'x at 994.

### III. Supervised Release Sentencing Guidelines

Defendant argues that his supervised release guidelines were calculated based on the false premise that his Michigan conviction for resisting a police officer was a violent offense, and therefore a Grade A violation. As described above, Defendant attempted to raise this issue *pro se* at his sentencing hearing, but encountered opposition from the government, the district court, and his own attorney. We have previously held that the statute under which he was convicted, Mich. Comp. Laws § 750.81d(1), is a divisible statute encompassing conduct that is violent as well as conduct that is not violent. *United States v. Mosely*, 575 F.3d 603, 608 (6th Cir. 2009). Therefore, Defendant should not have suffered a guidelines enhancement for a violent offense without documentation under *Shepard v. United States*, 544 U.S. 13 (2005) to establish that he was charged under the prong punishing violent conduct. The government concedes the error. Defendant's supervised release sentence shall therefore be vacated and remanded to the district court for resentencing.[2]

### CONCLUSION

For the foregoing reasons, we **DISMISS** Defendant's appeal of his conviction and sentence for mail theft, and we **VACATE** his sentence for violating supervised release and **REMAND** to the district court for resentencing.

---

[2] Because we vacate Defendant's sentence for violating supervised release, we need not rule on his claim that the district court improperly treated U.S.S.G. § 7B1.3, Application Note 4 as mandatory in determining that his supervised release sentence would be served consecutively to his mail theft sentence. On remand, the district court will of course bear in mind the advisory nature of the guidelines.