**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0016n.06

**No. 14-2461**

**FILED**
Jan 09, 2017
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**UNITED STATES OF AMERICA,**

      **Plaintiff-Appellee,**

**v.**

**LAWRENCE NATHAN WILSON,**

      **Defendant-Appellant.**

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN**

**BEFORE:** CLAY, KETHLEDGE, and DONALD, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Lawrence Nathan Wilson entered into a plea agreement with the government agreeing to plead guilty to possession with intent to distribute twenty-eight grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(B)(iii). Defendant now challenges his sentence, contending, among other things, that the district judge failed to properly consider the 18 U.S.C. § 3553(a) factors in imposing the term of his sentence and the conditions of supervised release.

For the reasons set forth below, we hold that Defendant's appeal is foreclosed by the scope of his appellate-waiver; accordingly, we **AFFIRM** Defendant's sentence.

## BACKGROUND

### Factual Background

Defendant was indicted in the United States District Court for the Western District of Michigan on one count each of possession with intent to distribute the following drugs: crack

cocaine, powder cocaine, and marijuana. On May 29, 2014 Defendant and the government entered into a plea agreement whereby Defendant pled guilty to Count One of the indictment—namely, that he had possessed 28 grams or more of crack cocaine with the intent to distribute, in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(B)(iii). The parties entered an amended plea agreement on June 9, 2014, which, like the original plea agreement, contained a waiver of Defendant's appellate rights.[1] The waiver contained an exception affording Defendant the right to appeal any sentence that "exceeds the statutory maximum or is based upon an unconstitutional factor, such as race, religion, national origin, or gender."

On June 11, 2014, a change of plea hearing was held before a magistrate judge. After discussions with the government about the plea agreement, the magistrate judge explained to Defendant the maximum penalties both if he pleaded guilty or proceeded to trial. The magistrate judge then explained the Sentencing Guidelines at length and explicitly informed Defendant it was impossible to pinpoint what his advisory Guideline range would be. Defendant assured the court that he had discussed the agreement with his attorney and understood it. As part of the hearing, the magistrate judge permitted the government to summarize the plea agreement, which the government did by practically reading the agreement verbatim. Following this exchange, the magistrate judge personally explained the agreement to Defendant, including the terms of the appellate-waiver.

In describing the appellate-waiver, the magistrate judge informed Defendant that he would retain certain rights to appeal. These rights were triggered in the event of a constitutional violation or if the court "were to sentence [Defendant] to something more than what the law allowed." Acknowledging that he understood, Defendant agreed to waive his appellate rights.

---

[1] At the change of plea hearing, the magistrate judge insisted that the parties add and initial a clarification to paragraph 3 of the plea agreement, which is not relevant to the plea waiver. All future references to the plea agreement are to the initialed version.

Neither Defendant's attorney nor the government objected to the magistrate judge's summation of the plea waiver.

At the sentencing hearing, the district court reviewed the presentence report. In so doing, the court undertook a review of the § 3553(a) factors, explicitly noting the long record of Defendant's convictions and arrests. The court found that the majority of offenses were drug related and demonstrated "a complete lack of respect for the law" or an "understanding of the seriousness of the crime." It could find no evidence of entrepreneurial activity. Accordingly, the court decided that to guarantee "an adequate deterrence to such criminal conduct and a protection of the public," a term of incarceration was necessary. In light of these factors, the court sentenced Defendant to a term of 192 months in custody, followed by a five-year term of supervised release. In so doing, the court mentioned the need to rehabilitate Defendant and for him to receive treatment. The court then imposed the following special conditions of supervised release: (1) Defendant must get regular testing and treatment for substance abuse; (2) Defendant must maintain legitimate full-time employment or otherwise engage in twenty hours per week of community service; (3) Defendant must participate in cognitive behavioral therapy; (4) Defendant shall not associate with felons or anyone using or possessing controlled substances; and (5) Defendant shall have a curfew of 11:00 p.m. unless excused in advance by his probation officer.

**Procedural History**

The district court entered judgment against Defendant on October 27, 2014. On November 12, 2014, Defendant filed a pro se notice of appeal. We dismissed the appeal for want of prosecution, but later reinstated the appeal. On February 11, 2016, the government moved to dismiss Defendant's appeal as barred by the appellate-waiver in his plea agreement. On April 7,

2016, a motions panel of this Court entered an order referring Defendant's motion to dismiss to the merits panel. In so doing, the motions panel rejected three of Defendant's four arguments as to why his appellate-waiver was invalid. However, the motions panel did find merit in Defendant's contention that the district court created ambiguity during his plea hearing by expanding the scope of his appellate-waiver. Accordingly, we now consider Defendant's arguments.

## DISCUSSION

### I. ENFORCEABILITY OF DEFENDANT'S APPELLATE-WAIVER

#### 1. Standard of Review

A defendant may waive any right, including a constitutional right, in a plea agreement if the waiver is knowingly and voluntarily made. *United States v. Toth*, 668 F.3d 374, 377–78 (6th Cir. 2012). This includes the right to appeal one's sentence. *See United States v. Wilson*, 438 F.3d 672, 674 (6th Cir. 2006). We review *de novo* the "issue of whether a criminal defendant has waived appellate rights in a valid plea agreement." *United States v. Detloff*, 794 F.3d 588, 592 (6th Cir. 2015). And a defendant may only "challenge a waiver of appeal rights 'on the grounds that it was not knowing and voluntary, was not taken in compliance with Fed. R. Crim. P. 11, or was the product of ineffective assistance of counsel.'" *Detloff*, 794 F.3d at 592 (quoting *United States v. Atkinson*, 354 F. App'x 250, 252 (6th Cir. 2009)). But before a district court may accept a defendant's guilty plea, "the court must inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Fed. R. Crim. P. 11(b)(1)(N). If the defendant fails to object before the district court, violations of Rule 11 are reviewed for plain error. *United States v. Melvin*, 557 F. App'x 390, 393 (6th Cir. 2013) (citing *United States v. Murdock*,

398 F.3d 491, 496 (6th Cir. 2005)). On plain error review, Defendant bears the burden of proof and must demonstrate: (1) an error (2) that is plain and (3) that affects substantial rights. *Id.* An appellate court then may exercise its discretion to notice a forfeited error only if (4) "the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id.*

### 2. Analysis

Defendant provides four reasons why he did not waive his appellate rights in the plea agreement. First, Defendant argues he could not knowingly and voluntarily waive his appellate rights in a plea agreement that failed to include a specified guidelines range. Second, Defendant contends that the terms of his appellate-waiver were too generic to preclude appellate review. Third, Defendant states that the terms of the plea agreement were too ambiguous to be enforced. And finally, Defendant claims that during his colloquy with the magistrate judge, the lower court introduced ambiguity into the scope of the appellate-waiver by inaccurately summarizing the conditions under which Defendant could appeal his sentence. We consider each in turn.

### i. Failure to include a recommended sentencing guideline range

Defendant first objects to the plea agreement on the grounds that the agreement failed to include a recommended sentencing range. Defendant cites *United States v. Martinez-Rios*, 143 F.3d 662 (2d Cir. 1998) to show that his plea agreement is "an usual form of waiver" which implicates the "knowing and voluntary inquiry to an even greater extent than does the standard plea." *Id.* at 669. Accordingly, he argues that his waiver of appellate rights was neither knowing nor voluntary.

We are not persuaded. *Martinez-Rios* predated the adoption of Rule 11(b)(1)(N); therefore, the court did not engage in a colloquy with the defendant to inform him of his rights. Defendant, on the other hand, did engage in an extensive colloquy with the magistrate judge,

who informed him that it was not possible to determine what type of sentence would be recommended under the guidelines. We have previously held under such circumstances that plea agreements need not include a specific recommended guidelines range in order to be enforceable. *See e.g., United States v. Martinez*, 430 F. App'x 406, 410 (6th Cir. 2011); *United States v. Thomas*, 605 F.3d 300, 314 (6th Cir. 2010); *United States v. Luebbert*, 411 F.3d 602, 603–04 (6th Cir. 2005). Consequently, we find that Defendant knowingly and voluntarily waived his right to appeal.

### ii. The language in the plea agreement does not operate as a waiver

Relying exclusively on *United States v. Dellheim*, 187 F. App'x 573 (6th Cir. 2006), Defendant next argues that the language of his appeal waiver does not actually function as a waiver of appeal. In *Dellheim*, we held that a waiver of a right to appeal any "lawful sentence" requires this Court to determine whether the sentence complies with law and, therefore, does not really function as an appeal waiver. *Id.* at 576. Defendant points to the following language in his appellate-waiver: "the defendant knowingly waives the right to appeal . . . the manner in which the sentence was determined on the grounds set forth in 18 U.S.C. § 3742," and claims that it also requires us to parse his sentence and determine whether it is lawful. (R. 31, Am. Plea. Agr., at Page ID 74). But unlike the language in *Dellheim*, Defendant's plea language has been enforced repeatedly by this court. *See, e.g.*, *United States v. Moon*, 808 F.3d 1085, 1088 (6th Cir. 2015); *United States v. Rothrock*, 617 F. App'x 511, 513 (6th Cir. 2015). Defendant neglects to explain to this Court why the language used in his plea, which is dissimilar to the language cited in *Dellheim*, creates the same nugatory effect. We therefore find that the language in Defendant's plea agreement validly operates as a waiver of appellate rights.

### iii.    The plea agreement is ambiguous

Defendant further argues, citing to *United States v. Whitelow*, 596 F. App'x 382 (6th Cir. 2015), that the language of the plea agreement is ambiguous because the agreement does not include any mention of a sentencing enhancement. But we have never held that an agreement automatically becomes ambiguous just because it fails to refer to a possible sentencing enhancement. To the extent Defendant suggests otherwise, he misreads *Whitelow*. The ambiguity in *Whitelow* was informed by a familiar principle of contract interpretation: when one or more things of a class are expressly mentioned, others of the same class are excluded. Because the plea agreement in *Whitelow* referenced only one sentencing enhancement, we recognized that a plausible reading of the agreement dictated that the plea agreement intended to exclude any additional sentencing enhancements in the future. Contrary to Defendant's argument, we have approved of precisely the same language now included in Defendant's plea agreement, holding it to be "in no way ambiguous." *United States v. Lash*, 584 F. App'x 285, 286 (6th Cir. 2014).

### iv.    The district court enlarged the scope of Defendant's appellate-waiver

Lastly, Defendant argues that the magistrate judge introduced ambiguity into the appellate-waiver by inaccurately describing the scope of the clause. Relying upon *United States v. Melvin*, 557 F. App'x 390 (6th Cir. 2013), Defendant contends that the magistrate judge's statement concerning his ability to appeal if his sentence was "something more than what the law allowed" considerably enlarged the grounds upon which his appeal could be brought.

We are not persuaded by Defendant's argument. In *Melvin*, the plea waiver only contemplated an appeal for ineffective assistance of counsel or prosecutorial misconduct, but the lower court informed the defendant of an additional right to appeal in the event of a "change in the law." While this might appear to "create ambiguity where none exists in the plain text of the

agreement," *id.* at 395 (quoting *United States v. Saferstein*, 673 F.3d 237, 242 (3d. Cir. 2012), it is clear that Defendant's case is inapposite. The terms of Defendant's plea agreement contained language that was substantially similar to the recitation undertaken by the lower court. In context, the phrase "more than what the law allowed," stated by the magistrate judge, and "statutory maximum," written in the plea agreement, are substantively one and the same.

Additionally, a rule 11(b)(1)(N) violation hinders a defendant's rights only if the plea colloquy includes "no functional substitute" for the Rule 11 safeguard. *Murdock*, 398 F.3d at 497. Our decision in *Melvin* partially rested upon the prosecutor's failure to object and thereby clarify any ambiguity between the lower court's statement and the terms of the defendant's agreement. Otherwise, we have held that "where the defendant states that he had reviewed the plea agreement with his attorney and that his attorney had explained the agreement, or where the prosecutor refers to the waiver provision in summarizing the terms of the plea agreement, this may be sufficient to insure that the waiver was knowing and voluntary." *United States v. Robinson*, 455 F.3d 602, 610 (6th Cir. 2006); *see also United States v. Sharp,* 442 F.3d 946 (6th Cir. 2006) (upholding plea where prosecutor summarized appellate-waiver provision, and defendant stated in court that he had read the plea agreement, that he understood its terms, and that he had discussed the agreement with his attorney); *Wilson,* 438 F.3d at 674 (holding that explanation of the appellate-waiver provision by prosecutor satisfied Rule 11).

At Defendant's change of plea hearing, the prosecutor restated the terms of the appeal-waiver almost word for word in front of Defendant. Defendant confirmed that he had read the plea agreement, consulted with his attorney, and understood the terms of the waiver provision. Thus, we reject Defendant's argument that any misstatement by the lower court introduced sufficient ambiguity to expand the scope of his appellate-waiver.

None of Defendant's other arguments on appeal, which address alleged sentencing violations, set forth a violation or potential violation of the appellate-waiver. Therefore, such arguments are foreclosed.

**CONCLUSION**

For the foregoing reasons, we **AFFIRM** Defendant's sentence and dismiss his appeal.