NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0015n.06

Case No. 22-3061

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Jan 11, 2024

KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| DONTE HOLDBROOK, | ) | |
| Defendant-Appellant. | ) | O P I N I O N |
| | ) | |
| | ) | |

Before: BOGGS, GILMAN, and NALBANDIAN, Circuit Judges.

**NALBANDIAN, Circuit Judge.** Donte Holdbrook pleaded guilty to conspiracy to possess fentanyl and heroin with intent to distribute. Under the parties' plea agreement, the government dismissed two other charges. In exchange, Holdbrook entered a guilty plea and waived his right to challenge his sentence on appeal.

But despite the appellate waiver, Holdbrook now asks us to vacate his sentence, claiming that it is substantively unreasonable and that a Sentencing Guidelines firearm enhancement was improper. Because we conclude that his appellate waiver was knowing and voluntary, we DISMISS his appeal.

I.

A.

From February 2017 to February 2018, Donte Holdbrook was the fentanyl and heroin kingpin of Middletown, Ohio. Holdbrook recruited members and directed a sophisticated drug operation with multiple stash houses and more than 30 sub-distributors in and around Middletown.

Holdbrook worked directly with the Sinaloa Cartel and imported kilograms of fentanyl and heroin from Mexico through California and Arizona. Six times, Holdbrook sent "drug mule" vehicles to pick up drugs and transport them back to Ohio. R. 120, Plea agreement at 6–7, PageID 340–41. Holdbrook's outfit laundered over $1.3 million in drug proceeds by smuggling cash in bulk back to Mexico.

Holdbrook was no passive ringleader, but an active participant in the drug operation. Holdbrook personally distributed fentanyl at least twice and, at the time of his arrest, possessed with intent to distribute 366 grams of a mixture containing fentanyl. Holdbrook even traveled to Mexico with a "tester" to sample and select drugs.

In August 2017, law enforcement intercepted a drug-mule trip from Arizona organized by Holdbrook, seizing 174.27 ounces of heroin, fentanyl, and ketamine that were valued at $418,248. A later search of a Middletown stash house belonging to Holdbrook's co-conspirator Frank Frazier, Jr. uncovered 0.8 ounces of a heroin-ketamine mixture, $8,124 in cash, and three firearms. Holdbrook was arrested on December 2, 2017, with law enforcement uncovering 12.91 ounces of fentanyl (worth more than $30,000) in his car, as well as $1,220 in cash.

Following his arrest, Holdbrook was charged with one count of possession with intent to distribute a controlled substance.

A superseding indictment charged Holdbrook with three offenses: (1) conspiracy to possess with intent to distribute fentanyl and heroin; (2) possessing fentanyl with intent to distribute; and (3) conspiracy to launder money.

B.

In September 2018, Holdbrook pleaded guilty only to the drug-conspiracy charge. Holdbrook also accepted a statement of facts detailing his drug trafficking, money laundering, and

2

role in arranging bulk cash pick-ups. In exchange, the government dropped the other two counts and agreed not to seek additional charges against Holdbrook for non-violent crimes based solely on conduct described in the superseding indictment.

The plea agreement also included an appellate waiver:

> In exchange for the concessions made by the USAO in this plea agreement, the Defendant waives the right to appeal the conviction and sentence imposed, except if the sentence imposed exceeds the statutory maximum. Defendant also waives the right to attack his conviction or sentence collaterally, such as by way of a motion brought under "28 U.S.C. § 2255". However, this waiver shall not be construed to bar a claim by the Defendant of ineffective assistance of counsel or prosecutorial misconduct.

R. 120, Plea agreement at 4, PageID #338.

Both Holdbrook and his attorney signed the agreement. Holdbrook's signature acknowledged that he reviewed the agreement with his attorney, understood it, and voluntarily accepted it. And the attorney's signature attested that he had reviewed the agreement with Holdbrook, that Holdbrook confirmed he understood and accepted the agreement, and that Holdbrook's "decision to enter into this agreement is an informed and voluntary one." R. 120, Plea agreement at 5, PageID #339.

The district court held a change-of-plea hearing in October 2018. Under oath, Holdbrook confirmed that he had read the charges against him and discussed the conspiracy offense thoroughly with his attorney. Holdbrook also correctly identified the minimum and maximum possible penalty. Holdbrook stated that he was not under the influence of any drugs or alcohol, and that he understood that he was pleading guilty. And Holdbrook's attorney also confirmed that he had no doubt about Holdbrook's competency to enter a plea. The district court explained what rights Holdbrook would give up by pleading guilty, and the prosecutor reviewed the written plea

agreement. The district court specifically asked Holdbrook about the appellate waiver, and Holdbrook confirmed that he understood that he could not appeal the court's sentencing decision.

At the end of the hearing, Holdbrook pleaded guilty to the drug conspiracy charge of the superseding indictment. The district court accepted the guilty plea, finding that Holdbrook was competent and that his plea was knowing and voluntary.

III.

Before sentencing, Holdbrook hired a psychologist, Jennifer O'Donnell, for a forensic evaluation. O'Donnell submitted a report based on two hour-long interviews, as well as Holdbrook's performance on several tests.

The report concluded that Holdbrook, although never diagnosed with an intellectual disability, was mentally "slow" and "easily distracted" as a child. R.159, O'Donnell Report at 2, PageID 476 (sealed). Holdbrook's school records revealed that he struggled in school, receiving a "developmentally handicapped" designation in pre-kindergarten, repeating kindergarten, and needing an individualized-education plan to graduate high school. Holdbrook did poorly on the ACT and dropped out of junior college. Holdbrook also scored poorly on an intelligence test administered by O'Donnell. In O'Donnell's judgment, Holdbrook showed "a lack of awareness of what he was apparently involved in" and "seemed genuinely perplexed by the notion that there were negative consequences to the drug trade." *Id.* at 4, PageID 478. The report concluded that Holdbrook had a mild intellectual disability. Ultimately, the report recommended that "Holdbrook be enrolled in cognitive behavioral therapy while in prison." *Id.* at 8, PageID 482. It also suggested that skill training would benefit Holdbrook and "prepare him for a more successful re-entry into the community when he is released." *Id.*

Pointing to O'Donnell's report, Holdbrook's sentencing memorandum requested a downward departure for diminished capacity under U.S.S.G. § 5K2.13. Although the memo conceded Holdbrook's "involvement in a serious conspiracy that created a strong risk of drug dependance and harm to the public," it also recommended that the sentencing judge consider Holdbrook's "intellectual disability" as a mitigating factor. R.237, Holdbrook Sent. Memo at 7, PageID 909.

At sentencing, the district court heard testimony from O'Donnell. Consistent with her report, O'Donnell testified that Holdbrook suffered from a mild intellectual disability as shown by psychological testing and school and Social Security records. Although she admitted that she "was not fully aware of" Holdbrook's offense conduct, O'Donnell claimed she "was quite surprised to hear that" Holdbrook "was a leader of a multi-national, international drug conspiracy."[1] R. 287, Sent. Tr. at 33, 44, PageID 1316, 1327. And although she conceded that Holdbrook "understood that drug dealing was wrong," O'Donnell suggested that Holdbrook met the criteria for a diminished-capacity departure because he had a propensity to follow instructions and "likely was unaware of the long-range consequences of his actions." *Id.* at 39, 41, PageID 1322, 1324.

After hearing O'Donnell's testimony, the district court rejected Holdbrook's request for a downward departure. The court concluded that "Holdbrook's disability does not meet the level of a departure under the law and facts." *Id.* at 54, PageID 1337. The court emphasized that although "Holdbrook may not have foreseen all possible repercussions of his conduct, he did understand what he was doing and the wrongfulness of his actions." *Id.* The court recognized that, by

---

[1] O'Donnell admitted she "did not incorporate" any facts about Holdbrook's offense conduct (such as law enforcement surveillance or witness testimony) "into [her] assessment." R. 287, Sent. Tr. at 45, 50, PageID 1328.

Holdbrook's own admission, he ran the drug-trafficking operation—regardless of his intellectual limitations.

But the district court took O'Donnell's "recommendation into account as a basis for a downward variance." *Id.* at 55, PageID 1338. Ultimately, the district court varied downward from a Guidelines range of life imprisonment to 300 months in prison, based in part on O'Donnell's testimony. Holdbrook did not object to this sentence at the hearing.

IV.

Holdbrook timely appealed. On appeal, Holdbrook claims (1) that a firearm enhancement to his Guidelines range was improper and (2) that his sentence was substantively unreasonable. But Holdbrook gave up his right to present either issue on appeal because his appellate waiver was knowing and voluntary. And because Holdbrook argues that the waiver was not knowing and voluntary for the first time on appeal, we review under the plain-error standard. *See United States v. Detloff*, 794 F.3d 588, 592 (6th Cir. 2015).

Criminal defendants can waive any right through a plea agreement, including the right to challenge their sentence on appeal. *United States v. Calderon*, 388 F.3d 197, 199 (6th Cir. 2004). Before accepting a plea with an appellate waiver, the district court "must inform the defendant of, and determine that the defendant understands" the appellate waiver. Fed. R. Crim. P. 11(b)(1). When the district court complies with this rule, we will enforce an appellate waiver unless "it was not knowing and voluntary" or "the product of ineffective assistance of counsel." *United States v. Atkinson*, 354 F. App'x 250, 252 (6th Cir. 2009). We determine whether the waiver was knowing and voluntary by looking at the written plea agreement and the plea colloquy. *United States v. Pitts*, 997 F.3d 688, 701 (6th Cir. 2021) (quoting *United States v. Carter*, 814 F. App'x 1000, 1006 (6th Cir. 2020)).

Holdbrook concedes that the district court "appears to have complied" with Fed. R. Crim. P. 11. Appellant Br. at 19. And Holdbrook does not claim that his counsel was ineffective. Instead, Holdbrook argues that we should disregard his appellate waiver because "it was not made knowingly and voluntarily and further its enforcement would result in a miscarriage of justice." *Id.* Holdbrook claims that his mild intellectual disability (as diagnosed by O'Donnell) means that he "could not have understood the consequences of waiving his appellate rights as evidenced by his filing of an appeal where his plea agreement contains a very broad appellate waiver." *Id.* at 20.[2]

We find Holdbrook's argument unpersuasive considering the written plea agreement and the plea colloquy. The written plea agreement (signed by both Holdbrook and his attorney) stipulated that Holdbrook was waiving his appellate rights. And, at the plea colloquy, the district court explained what rights Holdbrook was relinquishing, including the appellate waiver. The district court simplified the waiver's terms, telling Holdbrook that "if I sentence you to X years, you can't appeal my decision." R.286, Plea Hearing Tr. at 19, PageID 1274. And Holdbrook confirmed he understood. Given the district court's first-hand observation of Holdbrook, the court did not err (much less plainly err) in finding that Holdbrook knowingly and voluntarily relinquished his right to challenge his sentence on appeal.

O'Donnell's report and testimony do not alter this conclusion. If we credit O'Donnell's report and testimony, Holdbrook has a mild intellectual disability. But O'Donnell never suggested that this disability rendered Holdbrook unable to understand the terms of his plea agreement. And O'Donnell acknowledged that Holdbrook understood the wrongfulness of his actions. The report also indicates that Holdbrook was able to graduate from high school. And the report found that

---

[2] Holdbrook does not ask to set aside his entire plea agreement nor does he challenge the validity of his guilty plea. *See* Appellant Br. at 20 ("Mr. Holdbrook only challenges the enforceability of his appeal waiver . . . .").

Holdbrook "has an adequate understanding of the language and basic processes of the court." R.159, O'Donnell Report at 5, PageID 479 (sealed). Given these acknowledgements of Holdbrook's mental capacity, O'Donnell's report is consistent with the district court's conclusion that Holdbrook knowingly and voluntarily waived his appellate rights.

Neither of Holdbrook's claims on appeals falls within the exceptions listed by the appellate waiver: ineffective assistance of counsel, prosecutorial misconduct, or a sentence exceeding the statutory maximum. So, having concluded that Holdbrook's appellate waiver was valid, we dismiss both challenges to his sentence.

V.

Because Holdbrook's knowing and voluntary appellate waiver controls, his appeal is DISMISSED.