NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0638n.06

**No. 19-1550**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | FILED<br>Nov 10, 2020<br>DEBORAH S. HUNT, Clerk |
|  | ) |  |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
|  | ) | DISTRICT OF MICHIGAN |
| MICHAEL A. BERENSON, | ) |  |
|  | ) | **OPINION** |
| Defendant-Appellant. | ) |  |
|  | ) |  |

Before: GUY, CLAY, and KETHLEDGE, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Michael Berenson pleaded guilty to engaging in a child exploitation enterprise in violation of 18 U.S.C. § 2252A(g) and received a 660-month sentence. He appeals his conviction and sentence, alleging he received ineffective assistance of counsel. For the reasons set forth below, we **DISMISS** Defendant's appeal and **DENY** his request to recuse the sentencing judge.

**BACKGROUND**

From at least January 2012 to November 1, 2014, Defendant was part of a group of individuals that worked together with the goal and common objective to produce child pornography on a chatroom-based website ("Website A"). After the group disbanded, Defendant

continued to be active on Website A, producing child pornography, until the execution of a search warrant at his home on May 10, 2017.

The child exploitation enterprise was sophisticated and complex. The group's members would pretend to be teenage boys or girls, target victims via social media, and work together to pressure victims to engage in masturbation, and other sexual acts, in web-based chatrooms. Those acts were recorded via web camera, and the videos were shared among the group, and sometimes with others. The group's members, including Defendant, would communicate with each other in what they called "base" chatrooms. In these chatrooms, the group members would strategize about how they could convince minor females to perform various sexual acts on web camera that the group could then record. Group members had different roles, although a member could play more than one role or switch roles. There were "hunters," "talkers," "loopers," and "watchers." Hunters, for example, were tasked with visiting social media sites frequented by minors and convincing minor females to visit Website A. Talkers like Defendant asked the minor victims to complete "dares," eventually escalating into sexual activity.

Defendant recorded hundreds of minor female victims between January 1, 2012 and May 2017. He lied about his age and identity to convince minor females to engage in sexual activity on web camera. If such efforts were unsuccessful, Defendant would use threats. Defendant blackmailed at least ten minor females to engage in sexually explicit activity by threatening to share explicit images and videos of them with their Facebook contacts and teachers.

On August 3, 2017, Defendant was indicted in the Eastern District of Michigan on eight charges related to the group's efforts to coerce minor victims to engage in sexually explicit conduct on web camera so that the group could record the activity. He was the only defendant named in

the indictment, but he was charged with conspiring with an individual who resided in the Eastern District of Michigan. Ultimately, Defendant pleaded guilty to one count: Child exploitation enterprise, in violation of 18 U.S.C. § 2252A(g).

Defendant was represented throughout the district court proceedings by retained counsel, James C. Thomas. Thomas contemporaneously represented Daniel Walton, who was convicted of engaging in a child exploitation enterprise involving Website A in a separate case in the Eastern District of Michigan. Defendant did not raise any concerns about his representation before this appeal.

On April 22, 2019, a sentencing hearing was held, and the district court imposed a 660-month sentence of imprisonment.

## DISCUSSION

### I. Ineffective Assistance of Counsel

Defendant claims that he was deprived of the effective assistance of counsel under *Cuyler v. Sullivan*, 446 U.S. 335 (1980), because his attorney had a conflict of interest which adversely affected his representation. Defendant also contends that Thomas rendered ineffective assistance of counsel resulting in prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984).

The government argues that the record is insufficient to decide Defendant's claims of ineffective assistance of counsel. "As a general rule, this Court declines to rule on claims of ineffective assistance of counsel on direct appeal." *United States v. Detloff*, 794 F.3d 588, 594 (6th Cir. 2015) (citation omitted). "We take this course, when, as is often the case, the record is insufficient to assess the merits of the claim." *Id.* (quoting *United States v. Smith*, 600 F. App'x 991, 993 (6th Cir. 2015)). This is not one of the "rare cases where [counsel's] error is apparent

3

from the existing record," so consideration of Defendant's ineffective assistance of counsel claims is properly deferred in the first instance to a post-conviction proceeding under 28 U.S.C. § 2255. *United States v. Lopez-Medina*, 461 F.3d 724, 737 (6th Cir. 2006) (citation omitted).

### A. *Sullivan* **Claim**

Defendant claims that counsel had a conflict of interest and deprived him of effective assistance of counsel under *Sullivan* and *Mickens v. Taylor*, 535 U.S. 162 (2001). We disagree.

To succeed on a claim that a defendant was denied his right to conflict-free counsel, he must show "an actual conflict of interest." *Wood v. Georgia*, 450 U.S. 261, 273 (1981). "[T]he possibility of conflict is insufficient to impugn a criminal conviction." *Sullivan*, 446 U.S. at 350. In a case like this one, where neither counsel nor anyone else objected to the multiple representation, Defendant must show that "a conflict of interest actually affected the adequacy of his representation." *Id.* at 348–49. This means that a defendant must show that the alleged conflict influenced counsel's decisionmaking. *Mickens*, 535 U.S. at 171–72; *see Thomas v. Foltz*, 818 F.2d 476, 481 (6th Cir. 1987) (observing that "actual conflict" standard requires a defendant to show that counsel "made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other" (citation omitted)).

In this case, the evidence in the record concerning Thomas' alleged conflict is limited, and more evidence is needed to decide whether Thomas was ineffective under *Sullivan*. That Defendant is alleging ineffective assistance of counsel based on a conflict of interest does not necessarily make his claim suitable for consideration on direct appeal. This Court has found "[d]eferring such a fact-intensive issue to a post-conviction proceeding may be appropriate even where the defendant raises a claim . . . which is not subject to the two-pronged inquiry under

*Strickland.*" *Detloff*, 794 F.3d at 595 (citing *United States v. Herrera-Zuniga*, 571 F.3d 568, 591–93 (6th Cir. 2009)).

Defendant argues that counsel's representation of another Website A defendant created a conflict of interest. He specifically points to Thomas' failure to challenge the opening statement in the government's sentencing memorandum that "[o]f the more than 27 offenders apprehended and charged in the Eastern District of Michigan for their conduct on Website A, and the more than half-dozen that have been located elsewhere in the United States, Michael Berenson is by far the most culpable." (Government's Sentencing Mem., R. 35, Page ID #270) Defendant received, at 660 months, a longer sentence than any other Website A defendant by 168 months, and 294 months more than Daniel Walton, Thomas' other Website A client. Defendant asserts that an unconflicted attorney would have challenged the government's statement about his culpability relative to other Website A offenders. But there is no record evidence to back up this assertion. Thomas never testified why he decided not to challenge this statement in either the sentencing memorandum he submitted on Defendant's behalf or at the sentencing hearing. Additionally, it is unclear how the failure to challenge this particular statement affected the adequacy of Thomas' representation when he repeatedly argued that Defendant had reduced culpability because of his autism spectrum disorder. More information is needed to assess this claim.

Defendant also argues that the district court should have held a hearing to determine whether he knowingly and intelligently waived Thomas' conflict. A court is only required to hold such a hearing when it is aware of counsel's conflict of interest. *Mickens*, 535 U.S. at 172–73. It is not clear on the current record whether this threshold has been met. In his reply, Defendant only goes so far as to say that the district court was "presumably aware of the relationship between the

indictment charging [Defendant] and the indictment charging Walton." (Reply Br. 9–10) His argument is based on the fact both cases were assigned to Judge Judith E. Levy during the same period between September 26, 2017 and March 13, 2018. However, the cases were not formally related, and there is no indication that the district court was aware that Attorney Thomas was representing clients in both proceedings, let alone that there was a conflict of interest. "'[T]rial courts necessarily rely in large measure upon the good faith and good judgment of defense counsel[,]' such that '[u]nless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry.'" *Smith v. Hofbauer*, 312 F.3d 809, 815 (6th Cir. 2002) (quoting *Sullivan*, 446 U.S. at 346) (second and third alterations in original). On the current record, the district court was not required to inquire into the circumstances of Thomas' concurrent representation of Defendant and Walton.

**B. *Strickland* Claims**

To establish a *Strickland* claim, a defendant must show that counsel's performance was deficient and that he was prejudiced by that deficient performance. *Strickland*, 466 U.S. at 687. Deficient performance requires that counsel's representation "fell below an objective standard of reasonableness," and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 688–89. More evidence is needed to determine whether Thomas was ineffective under *Strickland*.

Defendant argues that counsel was ineffective for failing to challenge venue in the Eastern District of Michigan. On appeal, Defendant assigns two errors on this point to Attorney Thomas. First, he argues that Thomas should have challenged the writ ordering the King County Jail in Washington state to produce Defendant. The supporting petition erroneously stated Defendant had

been charged with being a felon in possession of a firearm, in violation of 18 U.SC. § 922(g)(1). Second, he argues that the plea colloquy, which featured an extended discussion about whether a coconspirator lived in the Eastern District of Michigan, indicates that there was significant doubt about proper venue. There is no evidence in the record explaining why Thomas decided not to challenge the defective writ application or venue. Nor does Defendant show that these efforts to have his case transferred to Washington for a federal or state criminal proceeding would have been successful. Accordingly, he does not show how Thomas' alleged deficient representation resulted in prejudice.

The focus of the *Strickland* claim, however, is on Thomas' representation during sentencing. Defendant argues that Thomas should have challenged the presentence investigation report because the investigator did not speak to Defendant's parents. This is despite the fact that the PSR indicated calls to Defendant's mother had not been returned. Similarly, Defendant challenges Thomas' failure to object during the sentencing hearing to the playing of a video made by a young woman, Amanda Todd, who committed suicide because of online exploitation, arguing that Defendant had no part in her death. However, he also recognizes that Thomas told the district court at the sentencing hearing that Defendant had no contact with Todd and that it was unfair to attribute responsibility for her death to him.

On the record before the Court, Defendant has also not shown that Thomas' presentation of Defendant's autism spectrum disorder in the sentencing memorandum or at the sentencing hearing was erroneous, let alone "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 843–44 (6th Cir. 2017) (quoting *Strickland*, 466

7

U.S. at 687). He has also not shown that Thomas' expression of sympathy for the victims of Defendant's conduct demonstrates that counsel abandoned his duty of loyalty and deprived Defendant of his right to counsel. *See Rickman v. Bell*, 131 F.3d 1150 (6th Cir. 1997). There has not been a sufficient showing that "counsel failed to function in any meaningful sense as the Government's adversary." *United States v. Cronic*, 466 U.S. 648, 666 (1984). Defendant will be able to fully litigate this issue in the more appropriate context of a post-conviction proceeding under 28 U.S.C. § 2255.

## II.    Reassignment and Recusal Request

Defendant also requests that his case be reassigned on remand or that Judge Levy be recused from any subsequent § 2255 proceedings due to "deep-seated and unequivocal antagonism that would render fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 556 (1994). Defendant challenges statements Judge Levy made during sentencing that he understands as encouraging his victims and evincing hostility towards him. For example, she declared that "you and your co-defendants cannot take the humanity from these girls and their families. You can't take it from me either. None of us will be destroyed by your conduct." (Sentencing Hr'g Tr., R. 46, Page ID #961) Statements revealing hostility to one of the parties, prejudgment of the merits, or alignment with one of the parties may be indicative of impermissible judicial bias. *United States v. Blood*, 435 F.3d 612, 629 (6th Cir. 2006). However, the comments made by the district court in this case do not rise to the level of judicial bias this Court has held "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *United States v. Lossia*, 193 F. App'x 432, 437 (6th Cir. 2006) (quoting *Liteky*, 510 U.S. at 555). While we may not have chosen

to make such statements, we nevertheless conclude that Defendant has not shown that he is entitled to a different district judge for subsequent proceedings in this case.

Defendant also challenges Judge Levy's impartiality based on her statements that her mother is an expert in autism, and that she herself worked with people with autism since childhood. However, these experiences are materially no different than when a judge "reads newspaper articles, magazines, or books that may relate to a case that may come before him." *United States v. Bonds*, 18 F.3d 1327, 1330 (6th Cir. 1994) (citations omitted). It is not "extra-judicial *knowledge* of disputed facts." *Id*. Reassignment or recusal is also not appropriate on this ground.

## CONCLUSION

For the reasons given above, we **DISMISS** Defendant's appeal and **DENY** his request for recusal of the district judge from further proceedings in this case.

**RALPH B. GUY, JR., Circuit Judge, concurring in the judgment.** I concur in the court's conclusion that the record in this case has not been sufficiently developed to decide defendant's ineffective-assistance-of-counsel claims and that these claims should be decided in a separate proceeding brought under 28 U.S.C. § 2255. I would not, however, address defendant's substantive arguments. Once the court concludes that the record is insufficiently developed, that should be the end of the matter.