NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0169n.06

Case No. 24-5266

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,<br><br>  Plaintiff - Appellee,<br><br>v.<br><br>JOSHUA SAMMY STEADMAN,<br><br>  Defendant - Appellant.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>**FILED**<br>Mar 27, 2025<br>KELLY L. STEPHENS, Clerk<br><br>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE<br><br>OPINION</td></tr>
</table>

Before: BATCHELDER, LARSEN, and RITZ, Circuit Judges.

**RITZ, Circuit Judge.** The district court denied Joshua Steadman's motions for new counsel during his sentencing proceedings. Steadman appeals that denial, arguing that it violated his Sixth Amendment right to counsel. Because the record shows no abuse of discretion by the district court, we affirm.

## I. Background

On January 30, 2021, a police officer found Steadman passed out in a parked vehicle with the engine still running and the driver's side door open. The officer arrested Steadman after Steadman failed a field sobriety test. Steadman had a loaded firearm on his person, and an inventory of the vehicle led to the discovery of a bag containing "43.5 grams of a white crystal-like substance." Eventually, Steadman pled guilty to (1) conspiring to distribute methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B), and (2) possession of a firearm in furtherance of that offense, in violation of 18 U.S.C. § 924(c)(1)(A).

Steadman's plea agreement stipulated that there were 40.49 grams of actual methamphetamine in his car. The agreement also included a waiver barring direct appeal and collateral attack except in limited circumstances. RE 52, Plea Agreement, PageID 105.

Following Steadman's change-of-plea hearing, the Probation Office prepared a presentence report (PSR) adopting the parties' stipulation as to the amount of actual methamphetamine. The PSR recommended a sentencing-guidelines range of 160 to 185 months' imprisonment.

Steadman's first sentencing hearing was held on February 1, 2024. Joseph McMurray, Steadman's court-appointed counsel, began the hearing by informing the court that Steadman wanted new counsel. The court asked Steadman to explain his concerns about McMurray. Steadman told the court that he "had been reading on . . . some motions to file" and that McMurray "had never filed that motion." RE 90, First Sent'g Tr., PageID 798. Steadman and McMurray then engaged in several back-and-forth exchanges with the court and had off-the-record discussions with each other. Ultimately, McMurray explained that Steadman wanted to object to the PSR's pure-methamphetamine quantity finding, but that McMurray believed he was precluded from raising that objection because Steadman had already admitted that fact in the plea agreement.

These exchanges with the court also revealed various communication challenges between McMurray and Steadman. Namely, Steadman had called McMurray "a couple of weeks" prior to the hearing and asked him to raise the objection. *Id*. Three days before the hearing, McMurray told Steadman that he had reservations about raising that objection. Steadman then called McMurray "two or three times" but for some reason "couldn't get through." *Id.* at PageID 797.

The court acknowledged that Steadman appeared to have "serious reservation" about proceeding with sentencing. *Id*. at PageID 804. But because Steadman was "still talking to

[McMurray]" and they seemed to "get along fine," the court asked Steadman whether he would prefer more time to talk with his attorney before deciding how to proceed. *Id.* at PageID 801-02. Steadman agreed and, in doing so, changed his mind and confirmed that he wanted to keep McMurray as his attorney. McMurray also reassured the court that he was still willing to work with Steadman. The court therefore denied Steadman's motion for new counsel and continued the sentencing proceedings.

A month and a half later, the parties reconvened for a second sentencing hearing. About a week before the hearing, Steadman filed a pro se motion requesting new counsel, claiming that McMurray was "not filing motions and not doing anything for [him]." RE 73, Mot., PageID 491. When the court asked Steadman at the hearing what objection McMurray was not raising on his behalf, Steadman responded: "To the purity, to pure meth to a mixture . . ." RE 89, Second Sent'g Tr., PageID 758-59. The court interjected and stated that it "underst[ood] th[e] argument." *Id.* at PageID 759. The court then asked Steadman whether he would proceed with sentencing if the court were to consider his objection on the record. Steadman said, "Yes." *Id.* at PageID 761.

The court interpreted Steadman to be arguing for a downward departure from his sentencing-guidelines range "because the punishments are [much] greater for actual methamphetamine versus a mixture," rather than as an objection to the PSR's actual-methamphetamine quantity finding. *Id.* at PageID 760. But when the court verbalized Steadman's argument as the court understood it, Steadman confirmed: "Yes, the harshness, yeah." *Id.* at PageID 759. Throughout the rest of the hearing, neither Steadman nor McMurray corrected the court's understanding. And because Steadman agreed to proceed with sentencing, the court denied the motion for new counsel without addressing the propriety of the pure-methamphetamine quantity finding. The court imposed a within-guidelines sentence of 168 months' imprisonment.

Steadman now appeals.

## II. Analysis

Steadman argues that the district court erred in denying his motions for new counsel. He contends that McMurray's refusal to object to the PSR's pure-methamphetamine quantity finding warranted appointment of new counsel. For the reasons below, we affirm.

### A. Waiver

We first acknowledge the waiver issue presented in this appeal. Steadman's written plea agreement contained a waiver barring "a direct appeal of the defendant's conviction(s) or sentence." RE 52, Plea Agreement, PageID 105. The waiver carved out an exception for an appeal of a sentence imposed above certain limits, but the parties agree this exception does not apply here. The parties instead focus on whether Steadman's appeal of the denial of his motions for new counsel constitutes an appeal of his "conviction(s) or sentence." Steadman also argues that the waiver is unenforceable even if it were to encompass his claim. But we need not decide these issues because Steadman's claim fails on the merits. *See United States v. Ross*, 454 F. App'x 453, 454 (6th Cir. 2012) (affirming on the merits without deciding whether defendant's claim falls within scope of appellate waiver); *United States v. Caruthers*, 458 F.3d 459, 472 (6th Cir. 2006) (affirming on the merits after assuming appeal waiver was unenforceable), *abrogated on other grounds by Mathis v. United States*, 579 U.S. 500 (2016).

### B. Motions for new counsel

We review the denial of a motion for new counsel under a deferential abuse-of-discretion standard. *United States v. Trujillo*, 376 F.3d 593, 606 (6th Cir. 2004) (citing *United States v. Williams*, 176 F.3d 301, 314 (6th Cir. 1999)). "In particular, we consider: (1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict

between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice." *Id.* (quoting *United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001)). Applying these factors, we hold that the district court did not abuse its discretion in denying Steadman's motions for new counsel.

### 1. Timeliness

First, we consider the timeliness of Steadman's motions for new counsel. A defendant's motion for new counsel is generally timely if he files it shortly after becoming dissatisfied with the representation he is receiving. *United States v. Hudson*, No. 21-4126, 2023 WL 1463701, at *6 (6th Cir. Feb. 2, 2023) ("We . . . consider the extent to which the defendant's request *could* have been timelier at all based on when the defendant's concerns about counsel actually arose.") (collecting cases).

Both of Steadman's requests for new counsel were timely. He made his first request at the first sentencing hearing after realizing earlier that day that he wanted new counsel due to communication challenges with McMurray and disagreement over raising the objection at issue. Following that hearing, Steadman made his second request, this time through a written pro se motion, approximately a week after McMurray confirmed that he was not going to challenge the PSR's drug-quantity finding in light of the plea agreement. These facts show sufficient temporal proximity between when Steadman's concerns arose and when he made the requests. *See United States v. Evans*, 406 F. App'x 946, 951 (6th Cir. 2011) (upholding district court's finding that new-counsel request was timely when made two weeks after defendant became dissatisfied). The government does not dispute these requests' timeliness.

Thus, the first factor weighs in Steadman's favor.

## 2. Adequacy of court's inquiry

Next, we consider whether the district court conducted an adequate inquiry into Steadman's request. When a defendant seeks to have his counsel removed, the district court has a duty to investigate why. *United States v. Iles*, 906 F.2d 1122, 1131 (6th Cir. 1990). To satisfy this duty, district courts "simply must allow a defendant the opportunity to explain the attorney-client conflict as he perceives it." *United States v. Marrero*, 651 F.3d 453, 465 (6th Cir. 2011) (citing *United States v. Vasquez*, 560 F.3d 461, 467 (6th Cir. 2009)). In our view, the district court here did that and more.

Start with the first sentencing hearing. When McMurray informed the court that Steadman wanted a new attorney, the court gave Steadman the opportunity to explain his concerns. RE 90, First Sent'g Tr., PageID 798 ("Let me do this, I'm going to ask [Steadman] some questions regarding the attorney-client relationship . . . . Mr. Steadman, what's the problem?"). In response, Steadman initially characterized his objection as seeking a "downward variance," as opposed to challenging the PSR's pure-methamphetamine quantity finding. *Id.* After McMurray clarified that Steadman wanted to object to the amount of actual methamphetamine, the court affirmatively verified with Steadman that McMurray's description was accurate. *Id.* at PageID 800.

The court's inquiry did not end there. The court allowed multiple off-the-record discussions between Steadman and McMurray so that Steadman could consider how to proceed. And because Steadman and McMurray were "still talking" and seemed to be "get[ting] along fine," the court asked whether Steadman wanted "more time to talk with" his attorney. *Id.* at PageID 801. Accepting the offer, Steadman changed his mind and confirmed that he wanted to keep McMurray as his attorney. Similarly, McMurray reassured the court that "if [Steadman] c[ould] work with [him], [he] could work with [Steadman]" and that they still "g[o]t along very well" and were "very

cordial." *Id.* at PageID 797, 802. Under these circumstances, the court recognized that the attorney-client relationship was not "irretrievably broken," *id.* at PageID 802, and thus made an "explicit finding[] to support its exercise of discretion in [denying Steadman's] motion." *Hudson*, 2023 WL 1463701, at *7 (citing *Benitez v. United States*, 521 F.3d 625, 635 (6th Cir. 2008)). The court's inquiry can hardly be deemed "cursory" or "[im]patient[]," as Steadman suggests. CA6 R. 26, Appellant Br., at 20, 25.

The same goes for the second sentencing hearing. The court began the hearing by acknowledging Steadman's written pro se motion and once again invited Steadman to explain his concerns. It is true, as Steadman notes, that the court interjected and said it understood his objection as seeking a downward variance on the ground that the drug-quantity provisions of the sentencing guidelines punish possession of actual methamphetamine more harshly than they do possession of a methamphetamine mixture. Steadman further contends that he relied on the court's statement that it had "underst[ood]" his objection in choosing to proceed without new counsel. RE 89, Second Sent'g Tr., PageID 759.

But it is also true that neither Steadman nor his attorney corrected the district court's understanding despite multiple chances to do so. When the district court verbalized its understanding of his objection, Steadman reaffirmed it by answering, "Yes, the harshness, yeah." *Id.* at PageID 759. And when the court asked whether all his issues with McMurray were resolved and whether he wished to proceed with sentencing, Steadman answered in the affirmative three times without correcting the court. He thereafter failed to correct the court when asked whether his attorney had raised all the desired objections to the PSR; when the court invited him to allocute; and when the court yet again reiterated its understanding of Steadman's objection toward the end of sentencing.

Under these circumstances, the district court cannot be faulted for its interpretation because it "reasonably believed that [Steadman's] problems" with his counsel "had been solved." *Iles*, 906 F.2d at 1131 (holding that court satisfied its duty of inquiry where counsel "stated that the conflict that *he* perceived was cured" and defendant did not object); *see also Mack*, 258 F.3d at 556 (noting it is the defendant's burden to put the district court "on notice that [he] . . . wishe[s] to have [counsel] removed"). Steadman implies that he should not be faulted for failing to correct the court because he had to "represent himself" at sentencing. CA6 R. 26, Appellant Br., at 26. But the record shows that McMurray continued to argue on Steadman's behalf throughout sentencing. Thus, McMurray's failure to correct the court while representing Steadman—whether or not it is a basis for a claim for ineffective assistance of counsel, an issue we do not address—cannot be used to shift blame onto the court for failing to grant Steadman's motion to substitute counsel, given the court's reasonable belief at the time.

Accordingly, the second factor weighs against Steadman.

### 3. Good cause

Next, we inquire into whether the purported conflict between Steadman and McMurray was "so great as to 'result in a total lack of communication preventing an adequate defense.'" *Vasquez*, 560 F.3d at 467-68 (quoting *United States v. Mooneyham*, 473 F.3d 280, 292 (6th Cir. 2007)). This requires a showing beyond mere "communication with counsel which the defendant feels is unsatisfactory." *United States v. Jennings*, 83 F.3d 145, 149 (6th Cir. 1996). For this factor to weigh in his favor, Steadman must establish a "complete communication breakdown." *Id.*

Steadman fails to meet that high bar. Even if McMurray's communication efforts may have fallen short of Steadman's expectations, the record clearly shows that Steadman and

McMurray were communicating throughout the proceedings. They communicated before and during the first sentencing hearing and even stated that they wished to continue working with each other. Moreover, Steadman's pro se motion confirms that they continued to communicate after the first sentencing hearing. *See* RE 73, Mot., PageID 491; *see also United States v. DeBruler*, 788 F. App'x 1010, 1013 (6th Cir. 2019) (finding no total lack of communication where defendant's pro se motion for new counsel gave "several examples of their exchanges").

And finally, they communicated again shortly before the second sentencing hearing. RE 89, Second Sent'g Tr., PageID 758. During that hearing, McMurray presented various objections and argued for leniency on Steadman's behalf. Circumstances like these do not amount to "a total lack of communication." *Vasquez*, 560 F.3d at 467-68 (quoting *Mooneyham*, 473 F.3d at 292); *compare United States v. Saldivar-Trujillo*, 380 F.3d 274, 278 (6th Cir. 2004) (finding no abuse of discretion where defendant failed to show a "lack of opportunity or . . . inability to talk to his lawyer" (alteration omitted)), *with Hudson*, 2023 WL 1463701, at *9 (remanding where defendant's pro se letters stated neither he nor his wife could reach defense counsel at all for two months).

Steadman also argues that the district court should have granted his motions because there was an actual conflict of interest. According to Steadman, McMurray was never going to object to the pure-methamphetamine quantity finding because it would have revealed McMurray's ineffective representation during the plea-bargaining phase and thus jeopardized his own interest. Steadman premises this argument on the fact that McMurray stated during the first sentencing hearing, "We didn't specifically address this . . . ," when describing Steadman's objection to the PSR's pure-methamphetamine quantity finding. RE 90, First Sent'g Tr., PageID 800.

However, the record presents too much uncertainty to accept Steadman's theory and conclude that the district court abused its discretion. Although McMurray did make the statement above, he also stated immediately afterward that he and Steadman "went over line by line th[e] whole plea agreement," in which Steadman clearly stipulated to a specific quantity of pure methamphetamine. RE 89, First Sent'g Tr., PageID 800. Additionally, at his change-of-plea hearing, Steadman confirmed that he had "ample opportunity to read [the plea agreement] and discuss it with [his] attorney before [he] signed it," RE 88, Change of Plea Tr., PageID 739; that "[his] attorney explained to [him] all the terms that are contained in the plea agreement," including the factual basis for the counts to which he pled guilty, *id.* at PageID 739, 742-43; and that "[he] agree[d] that the government could prove those facts if called upon at trial," *id.* at PageID 743. And because Steadman did not raise this argument when he requested new counsel, the record contains no mention or finding by the district court regarding the alleged conflict-of-interest issue.

We generally defer fact-intensive assistance-of-counsel issues to post-conviction proceedings under 28 U.S.C. § 2255 to allow for the development of a fuller record. *United States v. Detloff*, 794 F.3d 588, 594-95 (6th Cir. 2015); *see also United States v. Cooper*, 642 F. App'x 514, 516 (6th Cir. 2016) ("[W]e decline to remand in this case because the possibility of a conflict is not apparent from the record."). The same approach is appropriate here. Steadman's plea agreement expressly permits him to bring such a claim in a § 2255 motion. *See* RE 52, Plea Agreement, PageID 105.

Accordingly, the third factor also weighs against Steadman.

### 4. Interests of justice

Lastly, we must balance the factors above against the public's interest in prompt and efficient administration of justice. *Mack*, 258 F.3d at 556. On the one hand, Steadman brings this

appeal to vindicate his constitutional right to effective assistance of counsel. We do not take that right lightly. And that is especially true here, given that Steadman fairly characterizes the pure-methamphetamine quantity as "the most important factual issue" for calculating his sentence, CA6 R. 26, Appellant Br., at 33, and that Steadman ultimately did not pursue an objection to the court's quantity finding.

On the other hand, Steadman's sentencing proceedings were already continued once to allow him to communicate with counsel. Appointing new counsel would have necessitated yet another last-minute continuance. In such situations, the district court's denial of a motion for new counsel is "entitled to extraordinary deference." *Vasquez*, 560 F.3d at 467 (quoting *United States v. Whitfield*, 259 F. App'x 830, 834 (6th Cir. 2008)). Moreover, even if it were true that appointment of new counsel would not have significantly delayed the sentencing proceedings, McMurray represented Steadman for almost a year, became familiar with this case, and both filed and amended Steadman's sentencing memorandum. These facts suggest that substitution of counsel would not have promoted the prompt and efficient administration of justice. *United States v. Collado-Rivera*, 759 F. App'x 455, 466 (6th Cir. 2019). It is also difficult to see how a change in counsel would have ultimately resulted in a lower guidelines range, considering Steadman's drug-quantity stipulation in the plea agreement.

On balance, we weigh the fourth factor neutrally. *See United States v. Derringer*, 844 F. App'x 802, 809 (6th Cir. 2021) (finding fourth factor neutral where appointment of new counsel would not have caused significant further delay in proceedings but still would have required last-minute continuance); *Collado-Rivera*, 759 F. App'x at 466 (finding same where the extent of existing counsel's representation weighed against appointing new counsel).

### III.  Conclusion

In sum, with only the timeliness of the motions for new counsel weighing affirmatively in Steadman's favor, and other factors either neutral or weighing against him, we conclude that the district court did not abuse its discretion in denying those motions.  Accordingly, we affirm.